UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>STATE OF ARKANSAS, *ex rel.*<br>LESLIE RUTLEDGE,<br>ATTORNEY GENERAL,<br><br>        Plaintiffs,<br><br>        v.<br><br>BINT OPERATIONS LLC, a limited liability<br>company,<br><br>LASHONDA MOORE, individually and as an<br>officer of BINT OPERATIONS LLC, and<br><br>MARLON DEANDRE MOORE, formerly known<br>as MARLON DEANDRE MAIDEN, individually<br>and as an officer of BINT OPERATIONS LLC,<br><br>        Defendants. | Case No. 4:21-cv-00518-KBG<br><br>**PLAINTIFFS' RESPONSE IN<br>OPPOSITION TO DEFENDANTS'<br>MOTION TO DISMISS FOR<br>LACK OF PERSONAL<br>JURISDICTION AND IMPROPER<br>VENUE, OR, IN THE<br>ALTERNATIVE, MOTION TO<br>TRANSFER VENUE** |

Table of Contents

I.   **Factual Background** ................................................................................................ 4

II.  **Defendants' Motion to Dismiss for Lack of Personal Jurisdiction** .............................. 5

    A.   Standard of Review ........................................................................................... 5

    B.   The Court Has Personal Jurisdiction over the Defendants Concerning the FTC's Claims Because Defendants Have Minimum Contacts with the United States ...................................... 6

    C.   The Court Has Personal Jurisdiction Concerning the Claims by the State of Arkansas .. 8

III. **Defendants' Motion to Dismiss or Transfer for Improper Venue Pursuant to 28 U.S.C. § 1406** ................................................................................................................ 11

    A.   Standard of Review ......................................................................................... 11

    B.   Defendants' Motion to Dismiss or Transfer for Improper Venue Should Be Denied Because Venue Is Proper ............................................................................................... 12

    C.   The FTC Act Establishes That Venue Is Proper for Counts I-IV ................................. 13

    D.   Venue Is Proper for All Counts Pursuant to 28 U.S.C. § 1391(b)(2) ........................... 14

    E.   Venue Is Proper as to Defendant BINT Operations LLC under § 1391(c)(2) .............. 15

IV.  **Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)** ................. 16

    A.   Standard of Review ......................................................................................... 16

    B.   Transferring this Case to the Eastern District of Texas Would Merely Shift Any Inconvenience to the Plaintiffs and Witnesses .................................................................... 18

    C.   The Location of the Conduct Does Not Weigh in Favor of Transfer. .......................... 20

    D.   This Court Is More Familiar with the Arkansas State Law at Issue. ........................... 21

V.   **Conclusion** ................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*, No. 2:11-cv-04099, 2011 U.S. Dist. LEXIS 103612 (W.D. Mo. Sept. 14, 2011) .................................................................................. 20

*Biddle v. Bradshaw*, No. 6:19-cv-6007, 2019 U.S. Dist. LEXIS 100994 (W.D. Ark. June 17, 2019) ............................................................................................................................. 11

*BNSF Railway v. Tyrrell*, 581 U.S. ___, 137 S. Ct. 1549, 1555 (2017) ....................................... 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................................................ 9, 11

*Carson v. Rd. Knights*, No. 4:20-cv-519, 2020 U.S. Dist. LEXIS 170213 (E.D. Ark., Sept. 17, 2020) .............................................................................................................................. 16

*Creative Calling Sols. v. LF Beauty Ltd.*, 799 F.3d 975 (8th Cir. 2015) ...................................... 9

*Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816 (8th Cir. 2014) ............................................ 9

*Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 790 (8th Cir. 2005) ........................................ 9

*Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir. 1979)) ................................................................ 6, 7

*Foreman Elec. Servs., Inc. v. Haliron Power, LLC*, No. 4:19-cv-4157, 2020 U.S. Dist. LEXIS 161933 (Sept. 4, 2020) ...................................................................................................... 16

*FTC v. Alternatel, Inc.*, No. 08-21433, 2008 U.S. Dist. LEXIS 129520 (S.D. Fla. Oct. 27, 2008) 6

*FTC v. Big Dog Solutions LLC*, No. 16-cv-6607, 2016 U.S. Dist. LEXIS 131811 (N.D. Ill. Sept. 27, 2016) ............................................................................................................. 17, 19

*FTC v. Cleverlink Trading Ltd.*, No. 05 C 2889, 2006 U.S. Dist. LEXIS 45244 (N.D. Ill. June 19, 2006) ................................................................................................................................. 7

*FTC v. On Point Global LLC*, No. 19-25046, 2020 U.S. Dist. LEXIS 62491 (S.D. Fla. Apr. 9, 2020) ................................................................................................................................. 6

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ........................................................................... 17

*Hathcock v. BNSF Ry. Co.*, No. 3:13-cv-00230, 2014 U.S. Dist. LEXIS 57900 (E.D. Ark. Apr. 24, 2014) ........................................................................................................................ 19

*Henry Law Firm v. Cuker Interactive, LLC,* 950 F.3d 528 (8th Cir. 2020) ........................... 9, 11

*Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923 (W.D. Mo. 1985) ......................................... 18

*In re Fed. Fountain*, 165 F.3d 600 (8th Cir. 1999) ..................................................................... 6, 7

*In Re Nine Mile Ltd.*, 692 F.2d 56 (8th Cir.1982) ....................................................................... 17

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................................................... 7

*Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339 (8th Cir. 1983) ........................................... 17

*Lewis & Clark Outdoors, Inc. v. L.C. Indus.*, 2008 U.S. Dist. LEXIS 51771 (W.D. Ark. June 11, 2008) .............................................................................................................................. 16

*Milliken v. Meyer*, 311 U.S. 457 (1940)) ...................................................................................... 7

*Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir. 1990)) ............................... 17

*Myers v. American Dental Assoc.*, 695 F.2d 716 .......................................................................... 13

*Nelson v. Soo Line R.R.*, 58 F. Supp. 2d 1023 (D. Minn. 1999) ................................................. 16

*Oil Tool Rentals, Co. v. SH Exploration, LLC*, No. 4:10-cv-00324, 2010 U.S. Dist. LEXIS 86625 (E.D. Ark. July 22, 2010) .................................................................................... 21

*Peacock v. Pace Int'l Union Pension Fund Plan*, 2007 WL 4403689 (M.D. Tenn. Aug. 23, 2007)) .............................................................................................................................. 19

*Primerica Life Ins. Co. v. Woodall*, No. 4:17-cv-272, 2017 U.S. Dist. LEXIS 227112 (E.D. Ark. Oct. 23, 2017) ................................................................................................................ 17

*Razorback Concrete Co. v. Dement Constr., LLC*, No. 3:07-cv-135, 2008 U.S. Dist. LEXIS 52742 (E.D. Ark. June 4, 2008) .................................................................................... 18

*SEC v. Electronics Warehouse, Inc.*, 689 F. Supp. 53 (D. Conn. 1988) ...................................... 17

*Setco Enters., Corp. v. Robbins*, 19 F.3d 1278 (8th Cir. 1994) .................................................. 12

*Sirius Computer Solutions, Inc. v. Evans*, No. 8:11-cv-439, 2012 U.S. Dist. LEXIS 146051 (D. Neb. Apr. 23, 2012) ........................................................................................................... 21

*Steen v. Murray*, 770 F.3d 698 (8th Cir. 2014) .......................................................................... 14

*Terra Int'l v. Mississippi Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997), *cert. denied*, 522 U.S. 1029 (1997)) .......................................................................................................... 3, 16, 17, 18

*Transamerica Life Ins. Co. v. IMG Mktg.*, No. 4:11-cv-00020, 2011 U.S. Dist. LEXIS 24796 (E.D. Ark. Mar. 10, 2011) .................................................................................................... 12

*Travelers Health Assn. v. Virginia*, 339 U.S. 643 (1950) ............................................................ 9

*United Power Ass'n v. L. K. Comstock & Co.*, Case 3-89 CIV 766, 1992 U.S. Dist. LEXIS 18874 (D. Minn. Oct. 27, 1992) ....................................................................................................... 7

*United States v. Scophony Corp. of Am.*, 333 U.S. 795 (1948) ................................................. 13

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .............................................................................. 18

*Van Praag v. Columbia Classics Corp.*, 849 F.2d 1106 (8th Cir. 1988) ....................................... 8

*Viasystems Techs., Corp. L.L.C. v. Forest City Commer. Dev., Inc.*, No. 4:08-CV-124, 2008 U.S. Dist. LEXIS 39032 (E.D. Mo. May 14, 2008) ...................................................................... 17

*Welsco, Inc. v. Brace*, 2012 U.S. Dist. LEXIS 103690 (E.D. Ark. July 24, 2012) ....................... 12

*Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995) .......................................................................... 14

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .............................................. 9

## Statutes

15 U.S.C. § 45b ................................................................................................................ 1, 2, 7, 14

15 U.S.C. § 53(b) ............................................................................................................. 2, 7, 13, 14

28 U.S.C. § 1391 .............................................................................................................. 3, 13, 14, 15

28 U.S.C. § 1404(a) .......................................................................................................... 16, 18

28 U.S.C. § 1406 .............................................................................................................. 11, 12

Ark. Code Ann. § 16-4-101(B) ............................................................................................... 8

Ark. Code Ann. §§ 4-88-101 through 4-88-117 ..................................................................... 1, 2

## Rules

FED. R. CIV. P. 12 ................................................................................................................. 5, 11

## Treatises

14D Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3806.1 (3d ed. 1998) .......... 12

15 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3854 (3d ed. 2012) ............... 21

Defendants have operated an illegal pyramid scheme that targeted African Americans and took advantage of financially distressed individuals during the COVID-19 pandemic.[1] This scheme, which Defendants marketed online, has harmed thousands of consumers across the country.[2] Perhaps more than any other state, Arkansas was affected. Hundreds of Arkansas consumers have complained to the FTC—by far the largest amount from any state—concerning the hundreds of thousands of dollars they have lost to Defendants' illegal pyramid scheme.[3] In response, the FTC and the State of Arkansas filed this case, which alleges violations of both federal and Arkansas state laws.[4] Given the preponderance of complaints from Arkansas, the Arkansas state-law issues, and the interest of this Court in adjudicating cases brought by the State of Arkansas, Plaintiffs elected to file in this District.

Having scammed more hard-pressed consumers in Arkansas than perhaps any other state, Defendants now seek to dismiss this case or transfer it to a venue where they would prefer to litigate.[5] Defendants first claim that the Court lacks personal jurisdiction because they live in

---

[1] Doc. 1 at 9 ¶24 and 10 ¶25.

[2] *Id.* at 21 ¶48.

[3] *See* Exh. A at 2 ¶8 (Declaration of FTC Investigator Brent McPeek); *see also* Exhs. B, C, and D. The FTC has received 828 consumer complaints concerning the Defendants' scheme. Exh. A at 2 ¶8. Of these, 275 were from Arkansas consumers—100 more than from Texas. *See id.*

[4] Doc. 1 at 23-30. Specifically, the FTC has alleged three counts concerning Defendants' violations of Section 5 of the FTC Act, 15 U.S.C. § 45 (Counts I-III). *Id.* at 24-25. The FTC and the State of Arkansas have jointly pled a count concerning Defendants violations of the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b (Count IV). And the State of Arkansas has separately pled three counts concerning Defendants violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101 through 4-88-117 (Counts V-VII).

[5] *See* Doc. 10 and 11.

Texas.[6]  However, Defendants' flawed brief utterly fails to mention, let alone analyze, the FTC

Act and the Consumer Review Fairness Act, both of which afford nationwide jurisdiction over

anyone with minimum contacts with the United States.[7]  In addition to the detailed allegations in

the Complaint describing Defendants' contacts with the United States,[8]  Defendants' own

declarations establish these minimum contacts by stating they operate in Texas.[9]  Likewise, in

their brief, Defendants failed to address or even mention the Arkansas Deceptive Trade Practices

Act (ADTPA),[10]  which authorizes the Attorney General to bring suit concerning violations of

the ADTPA perpetrated by any person[11]  upon Arkansas consumers. Thus, given the broad scope

of both state and federal statutes, as well as Defendants' meaningful and substantial contacts

with Arkansas residents, personal jurisdiction Defendants is undoubtedly proper.

     Next, Defendants request that the Court either dismiss the case for improper venue or

transfer the case to the venue they prefer, the Eastern District of Texas.[12]  The Court should deny

these requests too. First, venue is undoubtedly proper. The FTC Act and the CRFA provide that

venue is proper in any district where a defendant transacts business.[13]  The FTC alleges in its

---

[6]  *See* Doc. 10 at 2; Doc. 11 at 2.

[7]  *See* 15 U.S.C. § 53(b); *id.* § 45b(e)(5)(B).

[8]  *See generally* Doc. 1.

[9]  Doc. 10 at 8 ¶3-5, 12 ¶3-5, 16 ¶3.

[10]  Ark. Code Ann. §§ 4-88-101 *et seq.*

[11]  Under the ADTPA, a "person" is defined as "an individual, organization, group, association, partnership, corporation, or any combination of them." Ark. Code Ann. § 4-88-102(5).

[12]  *See* Doc. 10 at 3-4; Doc. 11 at 5-8.

[13]  15 U.S.C. § 53(b)(2). This grant of venue applies to the CRFA too as a "law enforced by the Federal Trade Commission." *See id.* § 53(b)(1).

2

Complaint that the Defendants have transacted business in this district[14] and has submitted evidence confirming it.[15] Moreover, venue is proper for all counts because a "substantial part of the events or omissions giving rise to the claim occurred" in this district, as consumer complaints and declarations establish.[16]

Venue transfer also would be improper. Plaintiffs' choice of this venue is entitled to "considerable deference"[17]—all the more so here, where the State of Arkansas has chosen to litigate in its home venue. Transferring this matter would merely shift any inconvenience to the Plaintiffs and the injured consumers who will serve as witnesses in this matter. Moreover, Defendants fail to satisfy their heavy burden of identifying with sufficient particularity any nonparty witnesses who would be less inconvenienced if this action were transferred to their chosen forum. Defendants further fail to identify any evidence that exists outside this forum requiring a transfer. Lastly, Defendants' requested transfer would require that Arkansas's state law claims be adjudicated in a venue unfamiliar with Arkansas state law.

In sum, Defendants failed to satisfy their burden of establishing the significant inconvenience required to outweigh the considerable deference given to Plaintiffs' choice of forum.[18] Accordingly, the Court should deny Defendants' Motion.

---

[14] *See* Doc. 1 at 4 ¶¶10-12.

[15] *See* Exh. A at 2 ¶8; *see also* Exh. B at 1 ¶1 (declaration from Dumas resident); Exh. C at 1 ¶1 (declaration from Little Rock resident); Exh. D at 1 ¶1 (declaration from Marion resident).

[16] 28 U.S.C. § 1391(b)(2); *see* Exh. A at 2 ¶¶8-9; *see generally* Exhs. B, C, and D.

[17] *Terra Int'l v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997), *cert. denied*, 522 U.S. 1029 (1997)).

[18] *See id.*

## I.      Factual Background

Defendants LaShonda Moore and Marlon Moore, through their company BINT Operations LLC, have operated a "blessing loom" pyramid scheme called "Blessings in No Time."[19]  This scheme has enriched Defendants at the expense of thousands of consumers in Arkansas and across the country, who have suffered millions of dollars in losses.[20]

Defendants have promised BINT members investment returns as high as 800 percent.[21] Defendants required that members pay a minimum of $1,400 to participate in BINT.[22]  Many members paid several times this amount, however, with many investing tens of thousands of dollars in Defendants' program.[23]  Defendants have portrayed their program as a legitimate and safe moneymaking program, promising consumers were entitled to a full refund of their investment should they ever decide to leave BINT.[24]

In furtherance of their scheme, Defendants actively recruited hundreds of Arkansas consumers, including many in this District,[25]  through live, interactive video calls.[26]  And Defendants have directed these members to recruit other individuals (typically friends and

---

[19] Doc. 1 at 2 ¶¶3-4.

[20] *Id.* at 21 ¶48.

[21] *Id.* at 2 ¶4.

[22] *Id.* at 6 ¶18.

[23] *Id.* at 6 ¶18; *see also* Exh. B at 2 ¶14 (invested $5,700); Exh. C at 2 ¶14 (invested $3,190); Exh. D at 2 ¶8 (invested $2,800).

[24] *Id.* at 11 ¶29          .

[25] Exh. A at 2 ¶¶8-9.

[26] Doc. 1 at 9 ¶23.

family[27]) on Defendants' behalf to join the "Blessings in No Time" program[28] and to confront individuals who hurt BINT's recruiting efforts by publicly criticizing the scheme.[29]  Defendants have directed these new recruits to make payments to other members.[30]  Moreover, Defendants oversaw the management of "subgroups"—smaller pyramids operated my other members within the larger BINT pyramid—that have operated nationwide.[31]

## II.   Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

### A.   Standard of Review

When considering a motion to dismiss for lack of personal jurisdiction,[32] a court must view the evidence "in the light most favorable to the party opposing the motion."[33]  The nonmoving party must be given "the benefit of all reasonable inferences" and the motion only granted "if there is no genuine issue as to any material fact, so that the moving party is entitled to judgment as a matter of law."[34]  The plaintiff must make a *prima facie* showing of jurisdiction, after which the defendant bears the burden of demonstrating the lack of personal jurisdiction.[35]

---

[27] *Id.* at 7 ¶19 and 17 ¶41; *see also* Exh. B at 1 ¶2; Exh. C at 1 ¶2; Exh. D at 1 ¶2.

[28] *Id.* at 9 ¶21, 11 ¶30, 17 ¶41.

[29] Doc. 1 at 17 ¶42.

[30] *Id.* at 7 ¶19, 8 ¶20.

[31] *Id.* at 18 ¶45.

[32] FED. R. CIV. P. 12(b)(2).

[33] *Radaszewski v. Telecom Corp.*, 981 F.2d 305, 310 (8th Cir. 1992), *cert. denied*, 508 U.S. 908 (1993).

[34] *Id.*

[35] *Id.*

"[A] complaint should not be dismissed for want of jurisdiction, before trial, if there is any genuine issue as to any fact material to the jurisdictional question."[36]

**B.    The Court Has Personal Jurisdiction over the Defendants Concerning the FTC's Claims Because Defendants Have Minimum Contacts with the United States**

Defendants claim that this Court may not exercise personal jurisdiction over them because they have insufficient contacts with Arkansas is based on a flawed understanding of the law.[37]   For this Court to exercise jurisdiction concerning the FTC's claims under the FTC Act and the CRFA, the Defendants need only have sufficient minimum contacts with the United States.[38]   Such nationwide grants of jurisdiction by Congress are commonplace and constitutional.[39]   The FTC has alleged these contacts,[40] and Defendants' declarations have confirmed them.[41]

In general, a court will find that the exercise of personal jurisdiction over a nonresident defendant satisfies due process where the defendant has purposefully established "minimum

---

[36]  *Id.* at 309.

[37]  Doc. 10 at 2.

[38]  *FTC v. On Point Global LLC*, No. 19-25046, 2020 U.S. Dist. LEXIS 62491, at *8 (S.D. Fla. Apr. 9, 2020) (quoting *FTC v. Alternatel, Inc.*, No. 08-21433, 2008 U.S. Dist. LEXIS 129520, at *1 (S.D. Fla. Oct. 27, 2008) ("For cases bringing claims under FTC Act, '[t]he relevant forum for purposes of minimum contacts is the United States.'").

[39]  *See, e.g.*, *In re Fed. Fountain*, 165 F.3d 600, 601-602 (8th Cir. 1999) (holding, as "virtually every other court" has, that when Congress has statutorily conferred "federal district courts with the power to exert personal jurisdiction nationwide," due process is satisfied if the defendant "'has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court'") (quoting *Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir. 1979)).

[40]  *See generally* Doc. 1.

[41]  Doc. 10 at 8 ¶3-5, 12 ¶3-5, 16 ¶3.

contacts" with the forum and the exercise of jurisdiction does "not offend 'traditional notions of fair play and substantial justice.'"[42]  Where a federal statute authorizes nationwide service of process, a court's exercise of jurisdiction over nonresident defendants depends on the defendants having minimum contacts with the United States as a whole—not the forum state.[43]  It is blackletter law that such grants of nationwide jurisdiction by Congress do not inherently violate due process.[44]

The FTC has alleged violations of the Federal Trade Commission Act and the Consumer Review Fairness Act.[45]  The Federal Trade Commission Act contains a nationwide service provision[46] that affords personal jurisdiction over anyone in the United States.[47]  So too does the CRFA.[48]  Therefore, for purposes of personal jurisdiction, it is irrelevant where in the United States Defendants may reside or operate. The defendant need only have minimum contacts with

---

[42] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[43] *See, e.g.*, *United Power Ass'n v. L. K. Comstock & Co.*, Case 3-89 CIV 766, 1992 U.S. Dist. LEXIS 18874, at *11 (D. Minn. Oct. 27, 1992); *see also BNSF Railway v. Tyrrell,* 581 U.S. ___, 137 S. Ct. 1549 (2017) ("'Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process.'").

[44] *See, e.g.*, *In re Fed. Fountain*, 165 F.3d at 602 (quoting *Fitzsimmons*, 589 F.2d at 333).

[45] Counts I-III concern Defendants' violations of the FTC Act. *See* Doc. 1 at 23-25. Count IV concerns Defendants' violation of the CRFA. *See id.* at 26-27.

[46] 15 U.S.C. § 53(b) ("In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.").

[47] *See FTC v. Cleverlink Trading Ltd.*, No. 05 C 2889, 2006 U.S. Dist. LEXIS 45244, at *13-15 (N.D. Ill. June 19, 2006).

[48] 15 U.S.C. § 45b(e)(5)(B) (providing for nationwide service of process); *see also Id.* § 45b.

the United States for this Court to have jurisdiction. And Defendants unquestionably have such contacts—their own declarations establish it.[49]

### C. The Court Has Personal Jurisdiction Concerning the Claims by the State of Arkansas

This Court also may assert personal jurisdiction over Defendants under Arkansas's "long-arm" statute, which permits the exercise of jurisdiction over non-residents. Doing so does not violate Defendants' due process rights, as Defendants have substantial contacts with this state and have purposefully availed themselves of the forum.

To assess whether personal jurisdiction exists pursuant to a long-arm statute, courts apply a two-part test.[50] First, a court must ask whether the statutory requirements are satisfied.[51] Second, a court must ensure "the exercise of personal jurisdiction is consistent with due process."[52]

Here, Arkansas's long-arm statute provides that "[t]he courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution."[53] Accordingly, the Court need only consider whether exercising jurisdiction over Defendants violates due process.

---

[49] *See* Doc. 10 at 8 ¶3-5, 12 ¶3-5, 16 ¶3 (admitting that Defendants reside and conduct business within the United States).

[50] *See Van Praag v. Columbia Classics Corp.*, 849 F.2d 1106, 1108 (8th Cir. 1988).

[51] *Id.*

[52] *Id.*

[53] Ark. Code Ann. § 16-4-101(B).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum such that the exercise of jurisdiction does not offend "'traditional notions of fair play and substantial justice.'"[54] These contacts "must be based upon 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"[55] This is because "[a] defendant's contacts 'must permit the defendant to reasonably anticipate being haled into court there.'"[56] The Supreme Court has made clear that parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."[57]

When assessing the sufficiency of a defendant's contacts with a forum, the Eighth Circuit applies a five-factor test. The five factors courts consider are "(1) the nature and quality of the contacts, (2) the quantity of the contacts, (3) the relationship of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience or inconvenience of the parties."[58]

---

[54] *Henry Law Firm v. Cuker Interactive, LLC,* 950 F.3d 528, 532 (8th Cir. 2020) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).

[55] *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 790 (8th Cir. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 4775 (1985)).

[56] *See Creative Calling Sols. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015) (quoting *Burger King Corp.*, 471 U.S. 474-75).

[57] *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).

[58] *Henry Law Firm v. Cuker Interactive, LLC,* 950 F.3d 528, 532 (8th Cir. 2020) (citing *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014)).

Given Defendants' substantial contacts with hundreds of Arkansan consumers, Defendants due process rights are not violated by the Court's exercising of jurisdiction here. As outlined in detail above[59] and in Plaintiffs' Complaint,[60] Defendants have affirmatively recruited hundreds of Arkansan consumers into their scheme. Defendants have further directed these consumers to recruit other individuals in their community to join BINT.[61]  As a result, more than 300 Arkansas consumers have complained to Plaintiffs concerning BINT's activities in Arkansas.[62] These complaints represent hundreds of thousands of dollars in income that Defendants have bilked from Arkansan consumers.[63]

Moreover, while Defendants reside in Texas, they have purposefully availed themselves of the privilege of conducting business in Arkansas. Defendants have deliberately recruited Arkansas consumers through their online interactive videos,[64] and they have solicited their investment in the scheme by interstate transactions. Had Defendants wished to avoid defending a lawsuit in Arkansas, they could have not recruited Arkansas residents to invest in their pyramid

---

[59] *See supra*, § I.

[60] *See generally* Doc. 10 at 7-9, 11-13, and 15-17.

[61] Doc. 1 at 9 ¶21, 11 ¶30, 17 ¶41.

[62] *See* Exh. A at 2 ¶8 (noting that 275 Arkansan consumers have complained to the FTC); Exh. E at 1 ¶6 (noting that 36 additional consumers have complained only to the Arkansas Attorney General's Office). Notably, these complaints represent only those Arkansan consumers that complained to the FTC and Arkansas Attorney General's Office. As such, these figures likely undercounts the number of Arkansans harmed by Defendants' scheme.

[63] *See* Exh. E at 1 ¶6 (Declaration of Arkansas Attorney General Investigator Shamikah Johnson).

[64] Doc. 1 at 9 ¶23.

scheme. But having done so, Defendants cannot successfully challenge the Court's exercise of jurisdiction here.

Lastly, jurisdiction is proper in this Court because the State of Arkansas has a substantial interest in providing a forum for its residents.[65] The Supreme Court has held that "a State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."[66] All the more so here, where the State of Arkansas, together with the FTC, is seeking redress for consumers, including hundreds of Arkansans. It would be "'unfair to allow" Defendants "to escape having to account" in an Arkansas Court simply because they reside across the border in Texas.[67]

Given that Defendants have maintained substantial contacts here and have purposefully availed themselves of the privilege of conducting business in Arkansas, due process is not offended by the exercise of personal jurisdiction over Defendants. Their motion should be denied accordingly.

III.    **Defendants' Motion to Dismiss or Transfer for Improper Venue Pursuant to 28 U.S.C. § 1406**

A.    **Standard of Review**

When considering a motion to dismiss for improper venue,[68] "the Court applies the same standard used for other motions to dismiss."[69] Thus, the Court should typically take "all well-

---

[65] *Henry Law Firm*, 950 F.3d at 532

[66] *Burger King*, 471 U.S. at 473.

[67] *Id.* at 474.

[68] FED. R. CIV. P. 12(b)(3).

[69] *Biddle v. Bradshaw*, No. 6:19-cv-6007, 2019 U.S. Dist. LEXIS 100994, *3 (W.D. Ark. June 17, 2019).

plead 'allegations in the complaint bearing on the venue question . . . as true, unless contradicted by the defendant's affidavits.'[70]  The plaintiff bears the burden of establishing that venue is proper.[71]

**B.      Defendants' Motion to Dismiss or Transfer for Improper Venue Should Be Denied Because Venue Is Proper**

Defendants' contention that this case should be dismissed or transferred pursuant to 28 U.S.C. § 1406 is meritless: Defendants repeatedly transacted business in this venue.[72]  In support of this claim, Defendants recite a number of reasons that a different district is purportedly more convenient for them. But such arguments do not render a venue improper.[73]  Moreover, as established below, Defendants' claim that they have not conducted business in this district is contradicted by consumer complaints and testimony.[74]

Plaintiffs have satisfied their burden of establishing that the Eastern District of Arkansas is a proper venue. Venue is proper for the FTC Act violations alleged in Counts I-IV because the

---

[70] *Transamerica Life Ins. Co. v. IMG Mktg.*, No. 4:11-cv-00020, 2011 U.S. Dist. LEXIS 24796, *5 (E.D. Ark. Mar. 10, 2011) (citations omitted).

[71] *Transamerica Life Ins. Co.*, 2011 U.S. Dist. LEXIS 24796, at *5.

[72] Doc. 10 at 2-4 (citing 28 U.S.C. § 1406).

[73] *See, e.g.*, *Setco Enters., Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) (noting that 1391(b)(2) does not require that a Court "ask which district among two or more potential forums is the 'best' venue" but instead "ask whether the district the plaintiff chose had a substantial connection to the claim" regardless of whether "other forums had greater contacts") (citations omitted); *Welsco, Inc. v. Brace*, 2012 U.S. Dist. LEXIS 103690, at *11 (E.D. Ark. July 24, 2012) (quoting 14D Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3806.1 (3d ed. 1998)) "[T]he Court focuses on the events or omissions in this district, not on the events or omissions in some other district. It is clear that 'there can be more than one district in which a substantial part of the events giving rise to the claim occurred.'").

[74] *See infra,* §§ III.C. and III.D.

Defendants have transacted business in this district.[75] And venue is likewise proper as to all counts because a substantial part of the events or omissions giving rise to the claim occurred in this district.[76] Lastly, venue is proper as to Defendant BINT Operations LLC because this Court has personal jurisdiction over it.[77]

### C.   The FTC Act Establishes That Venue Is Proper for Counts I-IV

The FTC alleged three violations of the FTC Act and one violation of the CRFA.[78] The FTC Act establishes that venue is proper as to these four counts.

Venue is appropriate in actions brought under Section 13(b) of the FTC Act in any district where a defendant "transacts business" or "wherever venue is proper under section 1391 of title 28."[79] Moreover, courts have construed the phrase "transacts business" broadly when interpreting venue statutes.[80] This grant of venue is accordingly broader than the general § 1391 venue statute.[81] This grant of venue applies not only to the FTC Act but also "any provision of

---

[75] *See infra,* § III.C.; 28 U.S.C. § 1391(b)(2); Doc. 1 at 4 ¶10-12; Exh. A at 2 ¶¶8-9; Exh. E at 1 ¶6.

[76] *See infra,* § III.D.; 15 U.S.C. § 53(b)(2); Doc. 1at 4 ¶10-12 (alleging that Defendants have transacted business in this district); Exh. A at 2 ¶¶8-9.

[77] *See infra,* § III.E.; 28 U.S.C. § 1391(c)(2).

[78] *See* Doc. 1 at 24-26.

[79] 15 U.S.C. § 53(b)(2).

[80] *See United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948) (The words "transacts business" have been given "a much broader meaning for establishing venue than the concept of 'carrying on business' denoted by 'found' under the preexisting statute and decisions").

[81] *See Myers v. American Dental Assoc.*, 695 F.2d 716, 726 (3rd Cir. 1982) (citing *Scophony Corp. of America*, 333 U.S. at 807) (noting that the Supreme Court held that the use of the phrase "transacts business" in the Clayton Act was intended to "expand the fora in which venue would lie").

law enforced by the Federal Trade Commission."[82]  This includes the CRFA, which is to be

treated "as a violation of a rule defining an unfair or deceptive act or practice prescribed under

section 18(a)(1)(B) of the Federal Trade Commission Act."[83]

Plaintiffs have alleged that Defendants have transacted business in this district.[84]  This

allegation must be taken as true when assessing venue.[85]  Additionally, Plaintiffs have submitted

evidence confirming that Defendants have transacted business in this district.[86]  Accordingly,

venue is proper in this district for Counts I-IV under the FTC Act.[87]

**D.  Venue Is Proper for All Counts Pursuant to 28 U.S.C. § 1391(b)(2)**

Venue is proper in the Eastern District of Arkansas as to all counts under 28 U.S.C.

§ 1391(b)(2). This subsection provides that "[a] civil action may be brought in a judicial district

in which a substantial part of the events or omissions giving rise to the claim occurred."[88]

---

[82]  15 U.S.C. § 53(b)(1).

[83]  15 U.S.C. § 45b.

[84]  Doc. 1 at 4 ¶¶10-12.

[85]  *Radaszewski*, 981 F.2d at 310.

[86]  *See* Exh. A at 2 ¶¶8-9; *see also* Exh. B at 1 ¶1 (declaration from Dumas resident); Exh. C at 1 ¶1 (declaration from Little Rock resident); Exh. D at 1 ¶1 (declaration from Marion resident); Exh. E at 1 ¶6.

[87]  Plaintiffs contends that even if the Court were unconvinced that venue is proper in the Eastern District of Arkansas for all counts pursuant to § 1391(b)(2), the FTC Act establishes that venue is proper for this case as a whole.

[88]  28 U.S.C. § 1391(b)(2). When assessing the "'events or omissions giving rise to the claim," courts are "to focus on relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995); *see also Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014).

Here, as detailed above,[89] Defendants actively recruited hundreds of Arkansan consumers, including many in the Eastern District.[90] Defendants directed these consumers' actions in this district to further their illegal operation. Through these actions, Defendants have harmed numerous residents of Arkansas—perhaps more than from any other state.[91] While Defendants may reside in Texas, they have actively operated their scheme in Arkansas in coordination with Arkansas residents and have maintained an extensive presence in this district. Therefore, venue is proper under § 1391(b)(2).

### E.   Venue Is Proper as to Defendant BINT Operations LLC under § 1391(c)(2)

This district is a proper venue for Defendant BINT Operations LLC pursuant to 28 U.S.C. § 1391(c)(2).[92] This provision provides that:

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.][93]

---

[89] *See supra*, § I.

[90] Doc. 1 at 9 ¶23.

[91] *See* Exh. A at 2 ¶8 (stating that 274 Arkansan consumers have complained to the FTC concerning BINT—100 more than the second highest state); Exh. E at 1 ¶6 (noting that an additional 36 consumers complained to the Arkansas Attorney General's Office and not the FTC).

[92] Plaintiffs acknowledge that the Complaint does not plead venue under § 1391(c)(2). However, Plaintiff would amend its Complaint to add this provision if the Court finds that doing so is required to establish venue.

[93] 28 U.S.C. § 1391(c)(2).

As established above, this Court has personal jurisdiction over Defendant BINT Operations LLC. Accordingly, venue is proper as to this Defendant under § 1391(c)(2), and Defendants' Motion to Dismiss for Improper Venue should be denied.[94]

## IV.   Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

Defendants request for transfer of venue under § 1404(a) should be denied because they fail to satisfy their burden to establish that the Eastern District of Texas is a more convenient forum than this Court.

### A.   Standard of Review

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[95] The party seeking such a transfer "typically bears the burden of proving that a transfer is warranted."[96] This is a "heavy burden."[97] Federal courts give "considerable deference to a plaintiff's choice of forum."[98] The Supreme Court has stated that

---

[94] Even if the Court disagreed that venue is proper in this district, dismissal would not be the appropriate remedy. Rather, under those circumstances, the case should be transferred in the interest of justice. Doing so would ensure that this litigation can be resolved, with Defendants enjoined and consumers redressed, as soon as possible.

[95] 28 U.S.C. § 1404(a).

[96] *Terra Int'l*, 119 F.3d at 695.

[97] *Foreman Elec. Servs., Inc. v. Haliron Power, LLC*, No. 4:19-cv-4157, 2020 U.S. Dist. LEXIS 161933, *19 (Sept. 4, 2020); *see also Nelson v. Soo Line R.R.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999) ("To prevail on a motion to transfer, the movant must show that his inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred.").

[98] *Terra Int'l*, 119 F.3d at 695; *Carson v. Rd. Knights*, No. 4:20-cv-519, 2020 U.S. Dist. LEXIS 170213, at *6 (E.D. Ark., Sept. 17, 2020); *see also Lewis & Clark Outdoors, Inc. v. L.C. Indus.*, 2008 U.S. Dist. LEXIS 51771, *15 (W.D. Ark. June 11, 2008) (quoting *Viasystems Techs., Corp. L.L.C. v. Forest City Commer. Dev., Inc.*, No. 4:08-CV-124, 2008 U.S. Dist. LEXIS 39032, at *9

"unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[99] "This principle is particularly forceful where, as here, the Plaintiffs' chosen forum was selected pursuant to a special venue statute which 'represents an affirmative congressional policy choice to allow . . . the widest possible choice of forums in which to sue.'"[100] Further, a change of venue "'should not be freely granted,' since courts 'are in the business of deciding cases, not playing procedural hockey among available districts at the whim of dissatisfied parties.'"[101]

When considering a transfer request under this provision, a court must "consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors."[102] Concerning convenience, courts consider factors including "(1) convenience of the parties; (2) convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents; (4) the location where the conduct complained of

(E.D. Mo. May 14, 2008) ("The party seeking transfer is required to make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed.") (internal quotation marks omitted).

[99] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 341 (8th Cir. 1983).

[100] *FTC v. Big Dog Solutions LLC*, No. 16-cv-6607, 2016 U.S. Dist. LEXIS 131811, at *5 (N.D. Ill. Sept. 27, 2016) (quoting *SEC v. Electronics Warehouse, Inc.*, 689 F. Supp. 53, 75 (D. Conn. 1988)).

[101] *Primerica Life Ins. Co. v. Woodall*, No. 4:17-cv-272, 2017 U.S. Dist. LEXIS 227112, *4 (E.D. Ark. Oct. 23, 2017) (citing *In Re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir.1982), *abrogation on other grounds recognized by Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1311 (8th Cir. 1990)).

[102] *Terra Int'l*, 119 F.3d at 696.

occurred, and (5) the applicability of each forum state's substantive law."[103]

Concerning the interest of justice, Courts consider factors including "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law."[104]

### B.   Transferring this Case to the Eastern District of Texas Would Merely Shift Any Inconvenience to the Plaintiffs and Witnesses.

Defendants have requested that the litigation be moved to a forum more convenient for them but less convenient to Plaintiff the State of Arkansas and the witnesses in this matter. This is a classic example of "a transfer [that] would merely shift the inconvenience from one party to another should not be granted,"[105] and the Court should accordingly decline to transfer this matter.

Defendants support their motion with a combination of threadbare evidence and rank speculation. In short, they have failed to satisfy their burden of establishing that transfer would actually be more convenient for the witnesses in this case. "The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. If a party has merely made a general allegation that witnesses will be

---

[103] *Razorback Concrete Co. v. Dement Constr., LLC*, No. 3:07-cv-135, 2008 U.S. Dist. LEXIS 52742, *4-5 (E.D. Ark. June 4, 2008) (quoting *Terra Int'l, Inc.*, 119 F.3d at 696).

[104] *Terra Int'l*, 119 F.3d at 696.

[105] *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 928 (W.D. Mo. 1985); *see also Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404 (a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.")

necessary, without identifying them and indicating what their testimony will be, the application for transfer will be denied."[106]

Far from providing specifics, Defendants' motion fails to identify a single witness. Instead, Defendants vaguely claim without evidence that "the majority of witnesses will be located in the Eastern District of Texas."[107]  Further, Defendants baldly speculate that "any experts will likely be from Texas," without explaining why expert testimony concerning Defendants' pyramid scheme would likely come from a Texas resident.[108]  Defendants likewise fail to identify documents or evidence located in Texas that would justify their requested transfer. Such conclusory statements cannot satisfy Defendants' burden of "clearly specify[ing] the key witnesses to be called" and describing their testimony.[109]

Defendants could not have satisfied this burden even had they tried. Contrary to Defendants' claims, the injured consumers who are likely to serve as witnesses—and their documentary records—are most likely to be found in Arkansas. Substantially more complainants

---

[106] *Hathcock v. BNSF Ry. Co.*, No. 3:13-cv-00230, 2014 U.S. Dist. LEXIS 57900, at *5 (E.D. Ark. Apr. 24, 2014) (quoting *Peacock v. Pace Int'l Union Pension Fund Plan*, 2007 WL 4403689, *10 (M.D. Tenn. Aug. 23, 2007)); *see also Big Dog Solutions LLC*, 2016 U.S. Dist. LEXIS 131811, at *8 ("This generalized invocation remains insufficient to carry movants' burden at this stage, as 'the party seeking transfer bears the burden of specifying the key witnesses to be called and summarizing their expected testimony.'").

[107] Doc. 11 at 8.

[108] *Id.*

[109] *Hathcock*, 2014 U.S. Dist. LEXIS 57900 at *5.

reside in Arkansas than in Defendants' preferred district.[110]  The Court should not inconvenience these witnesses by requiring that they travel to Texas.[111]

### C.     The Location of the Conduct Does Not Weigh in Favor of Transfer.

Defendants claim that this case should be transferred because "the site of the alleged conduct is in the Eastern District of Texas."[112]  However, as described above, although Defendants reside in Texas, their pyramid scheme has operated nationwide.[113]  Moreover, the available evidence suggests that the locus of BINT's activity was in Arkansas.[114]  Defendants then directed these members to recruit friends and family within their community.[115]  Given Defendants' focus on community recruitment,[116]  it is perhaps unsurprising that Arkansas was disproportionately affected by Defendants' scheme.[117]  Defendant Lashonda Moore is herself a former Arkansas resident.[118]

---

[110]  *See* Exh. A at 2 ¶8 (stating that 274 Arkansans have complained to the FTC concerning Defendants' scheme); Exh. E at 1 ¶6 (stating that 36 additional consumers complained to the Arkansas Attorney General's Office).

[111]  Plaintiffs note that "the availability of electronic depositions and testimony would greatly mitigate any inconvenience" for Defendants (who, in any case, reside only a few hours from this district). S*ee Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*, No. 2:11-cv-04099, 2011 U.S. Dist. LEXIS 103612, *10 (W.D. Mo. Sept. 14, 2011). The same may not be true for the consumer witnesses, some of whom may be without reliable computer access.

[112]  Doc. 11 at 8.

[113]  *See supra*, § I.

[114]  *See* Exh. A at 2 ¶¶8-9; *see also* Exhs. B, C, and D (declarations from Arkansan consumers).

[115]  *See* Doc. 1 at 7 ¶19, 17 ¶¶41-42, 21 ¶49; *see also* Exh. B at 1 ¶2; Exh. C at 1 ¶2; Exh. D at 1 ¶2.

[116]  *See* Doc. 1 at 7 ¶19 and 17 ¶41.

[117]  *See* Exh. A at 2 ¶8; *see also* Exh. E at 1 ¶6.

[118]  Doc. 10 at 8 ¶4.

Given the substantial activities of BINT in this district, the location factor does not weigh in favor of transfer. Moreover, it is outweighed by (1) the interest in ensuring the forum is convenient for the witnesses in this matter and (2) Arkansas's interest in having its state-law claims interpreted by an Arkansas federal court.

### D.      This Court Is More Familiar with the Arkansas State Law at Issue.

The State of Arkansas has alleged multiple violations of Arkansas state law.[119] It is in the interest of justice that Arkansas's state-law claims be adjudicated by an Arkansas federal court, not a Texas court likely to be unfamiliar with Arkansas law.[120] Moreover, while an out-of-state court could learn this law, it is in the interest of judicial economy that such claims be before an Arkansas federal court already familiar with Arkansas law.[121]

## V.      Conclusion

For the foregoing reasons, Defendants Motion should be denied.

Respectfully submitted,

Dated: August 18, 2021                    /s/ Reid Tepfer
                                          REID TEPFER
                                          Texas Bar No. 24079444

---

[119] Doc. 1 at 27-30.

[120] *See Oil Tool Rentals, Co. v. SH Exploration, LLC*, No. 4:10-cv-00324, 2010 U.S. Dist. LEXIS 86625, at *4-5 (E.D. Ark. July 22, 2010) (when deciding a motion for transfer under 28 U.S. Code § 1412, the court considered "the state's interest in having local controversies decided within its borders, by those familiar with its laws" and denied the transfer, noting "Arkansas has an interest in determining the action over the ownership of property in the state").

[121] *See Sirius Computer Solutions, Inc. v. Evans*, No. 8:11-cv-439, 2012 U.S. Dist. LEXIS 146051, at *36-37 (D. Neb. Apr. 23, 2012) (quoting 15 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3854 (3d ed. 2012)) (noting that "'it generally is thought to be an advantage' to have a state's law applied by a federal judge from 'a district of the state whose law is to govern' because that judge is presumed to be 'familiar with the governing state law'").

LUIS GALLEGOS
Oklahoma Bar No. 19098
Federal Trade Commission
1999 Bryan St., Ste. 2150
Dallas, TX 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
rtepfer@ftc.gov; lgallegos@ftc.gov

Attorney for Plaintiff
FEDERAL TRADE COMMISSION

LESLIE RUTLEDGE
Arkansas Attorney General

SHANNON HALIJAN
Arkansas Bar No. 2005136
DAVID A.F. MCCOY
Arkansas Bar No. 2006100
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 683-1509 (Halijan)
(501) 682-7506 (McCoy)
Shannon.Halijan@ArkansasAG.gov
David.McCoy@ArkansasAG.gov

Attorneys for Plaintiff
STATE OF ARKANSAS, *ex. rel*.
LESLIE RUTLEDGE, ATTORNEY GENERAL

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 18, 2021, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Eastern District of Arkansas, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court.

Don Godwin
Godwin Bowman P.C.
1201 Elm St., Ste. 1700
Dallas, TX 75270
*Attorney for Defendants*

*/s/ Reid Tepfer*
REID TEPFER

23