**Donald E. Godwin**
Texas State Bar No. 08056500
GODWIN BOWMAN, P.C.
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Ph: 214.939.4412
Fax: 214.527.3112
DGodwin@GodwinBowman.com

*Attorney for Defendants*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>STATE OF ARKANSAS, *ex rel.*<br>LESLIE RUTLEDGE,<br>ATTORNEY GENERAL<br><br>                      Plaintiffs,<br><br>vs.<br><br>BINT OPERATIONS LLC, a limited liability company,<br><br>LASHONDA MOORE, individually and as an officer of BINT OPERATIONS LLC, and<br><br>MARLON DEANDRE MOORE, formerly known as MARLON DEANDRE MAIDEN, individually and as an officer of BINT OPERATIONS LLC<br><br>                      Defendants. | CASE NO.: 4:21-CV-00518-KGB<br><br><br><br><br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

COME NOW, Defendants BINT Operations LLC ("BINT"), LaShonda Moore, and Marlon Deandre Moore (collectively, "Defendants") who file this Reply to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper

Venue, or, in the Alternative, Motion to Transfer Venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1404 and 1406 and would respectfully show the Court as follows:

## I.    INTRODUCTION

1. Plaintiffs' attempt to paint a picture of legal certainty that, when a "federal statute authorizes nationwide service of process, a court's exercise of jurisdiction over nonresident defendants depends on the defendants having minimum contacts with the United States as a whole."  However, in support of this assertion Plaintiffs rely on cases not only without precedence, but wholly unrelated to the Federal Trade Commission Act (the "FTC Act") and the Consumer Review Fairness Act (the "CRFA"), and in doing so ignore federal courts that have rejected Plaintiffs' theory of personal jurisdiction.  Indeed, the single case that Plaintiffs cited to from the Eighth Circuit, *In re Federal Fountain,* 165 F.3d 600, 602 (8th Cir. 1999) concerned a federal bankruptcy statute, not the FTC Act or the CRFA.  This is likely because the Eighth Circuit has yet to analyze either the applicable provisions of the FTC Act or the CRFA and whether their provisions give rise to nationwide personal jurisdiction.

2. At the same time, regardless of potential nationwide service of process conferring personal jurisdiction, the FTC Act, the CRFA, and all case law demands that Plaintiffs' suit be pursued in a proper venue, which Defendants have conclusively established is the Eastern District of Texas.

## II.    JURISDICTION

### A.    The FTC Act and the CRFA Do Not Confer Jurisdiction Over Defendants.

3. According to Plaintiffs, the provisions under the FTC Act and CRFA establish personal jurisdiction anywhere the FTC chooses to file if the defendant has minimum contacts

with any location anywhere in the United States. Under Plaintiffs' theory, they may file suit anywhere they deem strategically advantageous, regardless of the lack of relationship to the forum or whether the exercise of such jurisdiction would offend traditional notions of fair play. Such unfettered discretion is contrary to the due process analysis as informed by recent Supreme Court case law.

4. At the outset, Plaintiffs' opposition ignores the express language of Section 53(b) that requires the lawsuit "be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28." Such an interpretation of the statute renders this sentence completely superfluous, as Congress would have no need to limit venue to only where the defendants "reside or transact business or wherever venue is proper under section 1391 of Title 28" (as it does in Section 53(b)), nor would it be necessary for Congress to authorize (as it does in Section 53(b)) the suit against any other entity "without regard to whether venue is otherwise proper in the district in which the suit is brought." *See* 15 U.S.C. § 53(b). Rather, if Plaintiffs' suggested statutory reading were correct (which it is not), all of these issues would be resolved by the mere invocation of nationwide service of process, rendering the plain language of the statute meaningless.

5. Here, basic principles of statutory interpretation must apply. One key principle is that "[a]bsent any indication that doing so would frustrate Congress' clear intention or yield patent absurdity, [the Court's] obligation is to apply the statute as Congress wrote it." *See, e.g., Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 470 (1997) (internal quotes and citations omitted). Plaintiffs' reading of Section 53(b) demands the Court ignore this bedrock of statutory construction, which the Court should outright reject.

B. <u>Plaintiffs Ignore Due Process and SCOTUS Law Limiting Personal Jurisdiction.</u>

6. Due process requirements under the Fifth Amendment demand that an exercise of

personal jurisdiction must still satisfy the "minimum contacts" standard with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This is because "[d]ue process requires something more" than allowing jurisdiction "as long as defendants have minimum contacts with the United States as a whole." *See, e.g.*, *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1211 (10th Cir. 2000) ("Due Process requires something more" than permitting jurisdiction "as long as defendants have minimum contacts with the United States as a whole."); *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997) ("Even when a defendant resides within the United States, courts must ensure that requiring a defendant to litigate in plaintiff's chosen forum is not unconstitutionally burdensome.").

7. Even in nationwide service of process cases, courts must therefore evaluate "(1) the burden imposed upon defendant by litigation in the forum state; (2) defendant's reasonable expectations and the foreseeability of litigation in the forum state; (3) plaintiff's interest in convenient and effective relief; (4) the federal judicial system's interest in efficiently resolving controversies; and (5) the forum state's interest in having a court, within the forum state, adjudicate the dispute." *See Wichita Fed. Sav. & Loan Asso. v. Landmark Grp., Inc.*, 657 F. Supp. 1182, 1194 (D. Kan. 1987); *Cannon v. Gardner-Martin Asphalt Corp. Ret. Trust-Profit Sharing Plan*, 699 F. Supp. 265, 267-68 (M.D. Fla. 1988) (applying same analysis of *Wichita* court); *GRM v. Equine Inv. & Management Group*, 596 F. Supp. 307, 314-15 (S.D. Tex. 1984) ("There is no impelling reason to equate traditional fair play and substantial justice to minimum contacts with the nation as a whole."); *Bamford v. Hobbs*, 569 F. Supp. 160, 166 (S.D. Tex. 1983) ("Whether it is fair and substantially just for a court to exercise jurisdiction over a

particular defendant when nationwide service of process is permitted should be decided on a different basis. Factors to be considered include, the burden imposed on defendant if obliged to litigate in a distant forum, the plaintiff's interest in obtaining convenient and effective relief, the forum's interest in adjudicating the dispute, and the judicial system's interest in obtaining the most effective resolution of controversies."); *Duckworth v. Med. Electro-Therapeutics*, 768 F. Supp. 822, 828 (S.D. Ga. 1991) (applying two-part test; "...it seems unfair in many instances to require someone to defend in a distant forum merely because he is a United States citizen or corporation doing business in the United States.")."

8. Likewise, while due process protections of the Fifth Amendment are applicable as to federal courts and due process protections of the Fourteenth Amendment are applied as to state courts, the federal circuit courts have recognized such amendments are co-extensive, as "there is no meaningful difference in the level of contacts required for personal jurisdiction." *Livnat v. Palestinian Authority*, 851 F.3d 45 (D.C. Cir. 2017); *Waldman v. Palestinian Liberation Organization*, 835 F.3d 317, 343 (2nd Cir. 2016) (this "due process analysis - considerations of minimum contacts and reasonableness - applies even when federal service-of-process statutes are satisfied."); *see also id*. at 327-330 (2nd Cir. 2016) (rejecting argument that Fourteenth Amendment protections recognized in *Daimler v. Bauman*, 571 U.S. 117 (2014) are narrower than Fifth Amendment protections) & at 331 (under Fifth Amendment, plaintiff must show both that a defendant has sufficient minimum contacts with the forum and "reasonableness," i.e., "whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case.").

9. In applying applicable Fifth and Fourteenth Amendment standards, hailing

Defendants into court in the Eastern District of Arkansas violates the due process guarantees. While it is undisputed that Defendants have contacts with the United States as a whole, for the Constitution to be satisfied, however, that is not the end of the due process inquiry. Applying the factors applicable to cases involving nationwide service of process, the plaintiffs must also show that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, which they did not (and cannot) meet in this case.

    C.    <u>Plaintiffs' Interpretation of the FTC Act and the CRFA Is Nonsensical and Would Render Due Process Meaningless.</u>

10. In *Fountain*, the only Eighth Circuit case cited to by Plaintiffs (notably dealing with a bankruptcy statute), the court stated in dicta that it did not "detect" case law suggesting due process requires considering whether defendants would be put at a "severe disadvantage" or whether the "federal interest…outweighs attendant inconveniences to a defendant." However, this ignores a number of cases that correctly point out the absurdity of wholly divorcing due process from personal jurisdiction inquiries. Otherwise, "[t]o allow Congress to dictate personal jurisdiction through the enactment of nationwide service of process provisions, unquestioned by the judiciary, is nonsensical…to say that due process has no place in a personal jurisdiction inquiry seems contrary to the whole concept of due process." *Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F. Supp. 1102, 1106 (S.D. Ga. 1994). Notably, the Western District of Arkansas adopted the aforementioned analysis found in *Willingway Hosp.* to hold that despite the nationwide service of process provision found in ERISA, an analysis of defendants minimum contacts with the forum state is still applicable. *Burkhart v. Medserv* Corp., 916 F. Supp. 919, 922 (W.D. Ark. 1996) ("ERISA's policy may indicate that the due process analysis should be applied less stringently. However, we are not free to ignore the analysis altogether.").

11. Likewise, modern legal commentators have commented on the questionable logic

of permitting jurisdiction under this purely "national contacts" approach, stating the "mere existence of a nationwide service provision in the federal statue is *obviously* not sufficient to subject a defendant to personal jurisdiction." Personal Jurisdiction in Federal Question Cases, 4 Fed. Prac. & Proc. Civ. § 1068.1 (4th ed.) ("Wright and Miller") (emphasis added). In Wright and Miller's analysis of an extensive number of federal cases determining the question of nationwide service and personal jurisdiction, it determined "[f]ederal courts must still engage in a case-and-fact-specific inquiry in each case in order to determine whether they will reject the application of the national contacts standard or accept its application in that particular case." *Id.*

12.     Without controlling law as to whether the FTC Act and CRFA specifically confer nationwide personal jurisdiction pursuant to their service of process provisions, and in light of the applicable due process considerations, this Court should apply the "fairness" tests described in *Willingway Hosp* and confirmed by *Medserv Corp.* and numerous other federal courts. Such a test takes into consideration Congress's interest in providing federal courts authority to enforce its laws through nationwide service of process provisions, but also gives proper consideration to due process guarantees and states' interest in protecting its citizens from being hauled into court anywhere in the country, by engaging in the "minimum contacts" analysis that has been an integral part of personal jurisdiction determinations for decades.

13.     In fact, the most generous examination of the alleged evidence that Plaintiffs provided in support of their Response offers merely a tenuous connection between Defendants and the State of Arkansas, *at best*. To be sure, the three affidavits provided by allegedly injured resident of Arkansas *directly* contradict the notion that any Defendant reached out to, contacted, solicited, advertised to, or directed any activity whatsoever towards said affiant. In the first declaration, Angela Frye stated that "[i]n July 2020, I heard about a group called Blessings in No

Time, or "BINT," through a friend." *See* Declaration of Angela Frye Pursuant to 28 U.S.C §1746 ¶ 2, Exh. B to the Response.  Similarly, Shayla Dawson stated in her declaration that "[i]n the summer of 2020, I was approached by someone close to me who told me about an investment opportunity called "Blessings in No time" or "Bint." *See* Declaration of Shayla Dawson Pursuant to 28 U.S.C §1746 ¶ 2. Exh. C to the Response. Near identical factual allegations are found in Brian Lewis's declaration, wherein he states "[i]n or around May 2020, I heard about a program called Blessings in No Time (BINT) from two friends who had become members." *See* Declaration of Brian Lewis to 28 U.S.C §1746 ¶ 2  Exh. D to the Response. Notably, nowhere in these declarations did the declarants allege that these "friends" or people close to the affiant were acting as agents of BINT or on behalf of Defendants. The declarants make no allegation as to additional residents of Arkansas who may have allegedly been members of BINT—in fact, the declarants did not even provide whether their alleged knowledge of the existence of BINT was from fellow Arkansas residents.

14.     Further, the Declaration of FTC Investigator Brent D. McPeek ("McPeek Declaration") purportedly showing a number of injuries to "Arkansas consumers" amounts to nothing more than conclusory assertions without evidentiary basis. *See* Declaration of FTC Investigator Brent D. McPeek Pursuant to 28 U.S.C §1746 ¶ 2, Exh. A-1 to the Response. Without examination of the records these conclusory assertions were alleged to have been based on, records which could have been provided to this court (but were not), there is no way to confirm the allegations' validity.  To be sure, the mere statement that there are 274 Arkansas complaints offers no evidentiary value as to the legitimacy of statements made within those complaints, whether each individual complaint emanated from separate individual consumers rather than duplicated complaints, whether those allegedly injured consumers were, in fact,

injured, whether the amount by which they were allegedly injured is accurate or verified, or even whether the complaints were actually made by Arkansas residents. With the ease at which an individual can fill out an internet form, the relatively high profile of this case, and the existence of multiple online smear campaigns against Defendants—some of which have resulted in threats of violence against Defendants—the simple recounting of complaint numbers in a publicly accessible database offers little to no evidentiary value. At the very least, the McPeek Declaration should give some indication of the verification process that the CSN database engages in to separate real from fabricated complaints, and whether said verification process occurred in this instance. No such evidence exists, and thus the McPeek Declaration should be disregarded.

15. Plaintiffs have also offered no evidence to dispute the evidence included in Defendants' Motion to Dismiss, wherein Defendants swore that (1) Defendants are not domiciled in Arkansas; (2) Defendants' residence and/or primary principal place of business is in Texas; (3) BINT is a Texas limited liability company; (4) Defendants do not have an office or solicit any business in Arkansas; (5) Defendants do not own any property or hold any bank accounts or other assets in Arkansas; (6) Defendants do not have any employees or representatives in Arkansas; (7) Defendants do not have an Arkansas telephone number; (8) BINT is not registered to do business in Arkansas and does not maintain a registered agent for service in Arkansas; (9) the alleged activities giving rise to this action did not take place in and were not directed at Arkansas; and (10) Defendants have not traveled to Arkansas for any purported business purpose at issue before this Court. *See* Decls. of LaShonda Moore, Marlon Moore, and BINT Operations, LLC, attached to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, Motion to Transfer Venue as Exhibits A, B, and C. Thus, even if

this Court should find that the FTC Act and CRFA include nationwide service of process clauses, forcing Defendants to defend this suit in Arkansas would be a gross violation of both Constitutional principles of due process and traditional notions of fair play and substantial justice.

### III.  VENUE

#### A.  The FTC Act and CRFA Mandate Venue Be Proper Before Any Jurisdictional Analysis.

16.　As mentioned in the foregoing, the express language of Section 53(b) requires the FTC first to demonstrate that a defendant "resides or transacts business" or is properly venued in a district. 15 U.S.C. § 53(b).  Likewise, the CRFA demands that "[a]ny action brought under paragraph (1) may be brought in -- (i) the district court of the United States that meets applicable requirements relating to venue under section 1391 of Title 28; or (ii) another court of competent jurisdiction."  15 U.S.C. § 45b.

17.　The only logical reading of these statutes is that any suit under those sections filed by the FTC must first "be brought where such person, partnership, or corporation resides or transacts business," or wherever venue is proper under "section 1391 of Title 28."  Only then is the FTC authorized to effect service "on any person, partnership or corporation wherever it may be found." *See id*. & 15 U.S.C. § 53(b).  Such a reading gives effect to the statutes as a whole, and is compelled by the opening clause of the purported nationwide service of process provision: the phrase "[i]n any suit under this section" logically refers to a suit brought where a defendant "resides or transacts business, or wherever venue is proper ...." 15 U.S.C. § 53(b).

18.　Moreover, the legislative history does not support Plaintiffs' interpretation of the statutes. For one, the legislative history conveys the Congressional intent to "permit[] the FTC to join individuals and companies based in multiple jurisdictions in a single action, rather than

filing separate lawsuits in multiple jurisdictions." S. Rep. No. 103-130, at 15-16 (1993), reprinted in 1994 U.S.C.C.A.N. 1776. This intent is reflected in Section 53(b)'s "interests of justice" language, which permits the FTC to "[add] a party without regard to whether venue is otherwise proper in the district in which the suit is brought" in the limited circumstances where the FTC cannot properly join all necessary parties in any jurisdiction. *See, e.g., PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, No. 96-cv-3669 (JGK), 1997 WL 31194, at *4 (S.D.N.Y. Jan. 28, 1997), *aff'd*, 138 F.3d 65, 72 (2d Cir. 1998) (holding that because all the defendants could be sued in the Eastern District of Pennsylvania, the "ends of justice" in RICO case did not require jurisdiction over the individual defendants in the Southern District of New York); *Thomas v. JP Morgan Chase*, N.A., No. 11-cv-3656 (JG-RML), 2012 WL 2872164, at *5 (E.D.N.Y. Jul. 11, 2012) ("ends of justice" did not require exercise of personal jurisdiction in RICO case where claims could have been brought against all defendants in Texas federal court). Here, the "interests of justice" should not permit the Plaintiffs to bring Defendants into the Eastern District of Arkansas because it is undisputable that Plaintiffs could have brought this lawsuit in a jurisdiction that has personal jurisdiction over all Defendants – Texas.

  B. <u>Plaintiffs' Interpretation of the FTC Act and the CRFA Related to Venue Under 28 U.S.C. § 1391 Is Nonsensical.</u>

  19. As Plaintiffs admitted in their Response, under 28 U.S.C. § 1391, when assessing the "'events or omissions giving rise to the claim," courts are "to focus on relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995); *see also Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014). Yet, Plaintiffs, without any meaningful or evidentiary support that Defendants ever conducted *any* activity within the State of Arkansas, once again allege Defendants "actively recruited" and "actively operated their scheme in Arkansas." Such mere assertions are conclusory, as they lack support that any business activities

were ever directed toward Arkansas consumers as a discrete subset of the public at large, or that the activities actually occurred within the State of Arkansas.

20. If Plaintiffs' mere labels and conclusions were not enough, Plaintiffs' Response is replete with allegations against "Defendants," but hardly distinguishes the individual Defendants by name and does so only in a cursory manner. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff is obligated to provide more than mere "labels and conclusions" to demonstrate its entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

21. Accordingly, venue is improper as to the Defendants under any part of § 1391, and Defendants' Motion to Dismiss should be granted for these reasons.

    C. <u>Defendants Satisfied Their Burden to Establish That the Eastern District of Texas Is a More Convenient Forum than the Eastern District of Arkansas Under 28 U.S.C. § 1404(a).</u>

22. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See* 28 U.S.C. § 1404(a). When considering a transfer request under this provision, a court must "consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

23. When analyzing convenience, courts consider factors including "(1) convenience of the parties; (2) convenience of the witnesses—including the willingness of witnesses to

appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents; (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997).

24. When analyzing the interests of justice, courts consider "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997).

25. Plaintiffs are incorrect in their assertion that Defendants have requested "a transfer [that] would merely shift the inconvenience from one party to another." *See* Response in Opposition at p. 18. At the outset, such an assertion is nonsensical considering counsel for the FTC (the first-named Plaintiff) is located in Dallas, Texas. Likewise, Defendants provided sufficient evidence in the form of affidavits from La'Shonda Moore, Marlon Moore, and BINT Operations, LLC, evidencing BINT's existence and operations in Texas. *See* Exhibits A, B, and C accompanying Defendants' Motion to Dismiss. This means that four out of the five parties in this case are located in Texas—leaving only the State of Arkansas located in Arkansas. As a result, venue in the Eastern District of Texas is proper because of the overwhelming majority of the parties' existence in the Eastern District of Texas.

26. Plaintiffs' insistence that the locus of BINT's activity was in Arkansas ignores the fact that BINT's entire business and operations were located in the Eastern District of Texas. *See* Exhibits A, B, and C accompanying Defendants' Motion to Dismiss. Though BINT's existence could have traveled by word-of-mouth to other states, not by Defendants themselves as

acknowledged by Plaintiffs' insufficient declarations, BINT did not conduct recruitment activities of any kind in Arkansas, employ any individuals in Arkansas, or otherwise operate in the state.

27. Moreover, Plaintiffs' non-sequitur about Defendant La'Shonda Moore's prior residence in Arkansas is completely irrelevant to any analysis of personal jurisdiction or venue. Ms. Moore is currently a resident of the Eastern District of Texas and has not been an Arkansas resident since 2014—years before the alleged activity Plaintiffs have claimed took place. *See* Exhibit A accompanying Defendants' Motion to Dismiss. Likewise, for the same reasons discussed above, the McPeek declaration proffered by Plaintiffs fails as conclusory without any proper foundation. As has been shown, venue is not necessarily appropriate where purported complaints could have been generated, but where the alleged activity occurred. In which case, Plaintiffs failed to present any evidence that any complained-of activity actually happened within to confines of the State of Arkansas. Taken together with the fact that BINT's operations were centered in Texas, venue should be transferred to the Eastern District of Texas. *See Doshier v. Twitter, Inc*., 417 F. Supp. 3d 1171, 1179 (E.D. Ark. 2019) (granting a motion to transfer venue in case where most of the alleged acts or omissions giving rise to plaintiffs' claims took place in the same district where the defendant resided).

28. Finally, Plaintiffs' insistence that "Arkansas's state-law claims be adjudicated by an Arkansas federal court" is misplaced. Any federal court can adjudicate the state law claims of a state other than the one in which the court sits as long as it has jurisdiction, and this is not a dispositive consideration in the venue transfer analysis. In fact, this factor is given significantly less weight when the case involves basic or sufficiently well-established issues of state law, as is the case here. *See Sirius Computer Sols., Inc. v. Evans*, No. 8:11CV439, 2012 WL 13055016, at

\*11 (D. Neb. Apr. 23, 2012) (quoting 15 Charles Alan Wright et al., Federal Practice and Procedure § 3854 (3d ed. 2012)).  As a result, the issue of adjudicating this entire lawsuit in Arkansas *federal* court simply because it is based, in part, on Arkansas *state* law should be given no attention considering any federal court, including those in the Eastern District of Texas, is equally capable of analyzing Arkansas state law.

## IV.     PRAYER

WHEREFORE, Defendants respectfully request this Court grant their Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the alternative, grant their Motion to Transfer Venue by transferring the above-captioned lawsuit to the United States District Court for the Eastern District of Texas.

Respectfully submitted,

**GODWIN | BOWMAN** PC

_____
**Donald E. Godwin**
Texas State Bar No. 08056500
DGodwin@GodwinBowman.com
**Stefanie M. McGregor**
Texas State Bar No. 24037019
SMcGregor@GodwinBowman.com
**Kristin M. Burns**
Texas State Bar No. 24102934
KBurns@GodwinBowman.com

1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Ph:      214.939.4412
Fax:     214.527.3112

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on or about the 4th day of September, 2021, a true and correct copy of the above and foregoing pleading was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

_____
Donald E. Godwin