**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

FEDERAL TRADE COMMISSION *et al.*
and STATE OF ARKANSAS, *ex rel.*
LESLIE RUTLEDGE,
ATTORNEY GENERAL                                                              PLAINTIFFS

v.                                       **Case No. 4:21-cv-00518-KGB**

BINT OPERATIONS LLC, a limited liability
company; LASHONDA MOORE, individually
and as an officer of BINT OPERATIONS LLC;
and MARLON DEANDRE MOORE, formerly known
as MARLON DEANDRE MAIDEN, individually
and as an officer of BINT OPERATIONS LLC                          DEFENDANTS

<u>**ORDER**</u>

Before the Court is defendants BINT Operations, LLC ("BINT LLC"), Lashonda Moore,

and Marlon Deandre Moore's motion to dismiss for lack of personal jurisdiction and improper

venue, or, in the alternative, motion to transfer venue (Dkt. No. 10).  Plaintiffs Federal Trade

Commission ("FTC") and the State of Arkansas have responded in opposition to the motion (Dkt.

No. 12).  Defendants also submitted a reply to plaintiffs' response (Dkt. No. 16).  For the following

reasons, the Court concludes that it has personal jurisdiction over defendants, that venue in the

Eastern District of Arkansas is proper, and that the controlling factors do not counsel a transfer of

venue.  Therefore, the Court denies defendants' motion (Dkt. No. 10).

**I.      Background**

The FTC brings this action under §§ 13(b) and 19 of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. §§ 53(b), 57b, and the Consumer Review Fairness Act of 2016 ("CRFA"),

15 U.S.C. § 45b, which authorize the FTC to seek, and the Court to order, preliminary and

permanent injunctive relief, monetary relief, and other relief for defendants' acts or practices

allegedly in violation of § 5(a) of the FTC Act, 15 U.S.C. § 45(a), and § 2(d) of the CRFA, 15 U.S.C. § 45b (Dkt. No. 1, ¶ 1). The State of Arkansas brings this action to redress and restrain alleged violations of the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code § 4-88-101 *et seq*. (*Id.*, ¶ 2). Plaintiffs represent that they bring this lawsuit because defendants operated a "blessings loom" pyramid scheme which targeted Arkansans in violation of federal and state law (*Id.*, ¶¶ 1-4).

The following facts are taken from plaintiffs' complaint and other evidence submitted in plaintiffs' response to defendants' motion (Dkt. Nos. 1; 12; 12-1). Defendants operate "Blessings in No Time" ("BINT") which they claim to be a safe, lucrative, and legal moneymaking membership program (Dkt. No. 1, ¶ 3). According to plaintiffs, BINT is an illegal pyramid scheme that solicits money from consumers by promising them investment returns as high as 800 percent (*Id.*, ¶ 4). Plaintiffs indicate that defendants have taken funds from new members to pay other members, leading to most members losing money instead of earning any returns from the funds they have paid to participate in BINT (*Id.*). Plaintiffs also allege that defendants also prohibit members from posting anything concerning BINT online or on social media (*Id.*). Further, plaintiffs allege that, according to defendants, members who violate this rule risk forfeiting the funds formerly paid into BINT (*Id.*). Plaintiffs claim that this prohibition has prevented aggrieved consumers from alerting other consumers that BINT has not been a legitimate enterprise (*Id.*). According to plaintiffs, defendants through their BINT program have caused thousands of consumers tens of millions of dollars in losses (*Id.*).

Plaintiffs represent that Arkansas has been hit especially hard (Dkt. No. 12, at 1). FTC investigator Brent McPeek explains in his declaration submitted to the Court that the FTC received 828 consumer complaints concerning BINT (Dkt. No. 12-1, ¶ 8). Of those complaints, 274 or 33%

came from Arkansas (*Id.*).  Plaintiffs maintain that this number of complaints from Arkansas is by far the largest amount from any state, including complaints from Texas and in fact is more than the combined total of the complaints received from the next three states (Dkt. Nos. 12, at 5; 12-1, ¶ 8).  Of the Arkansas complaints, the majority came from three metropolitan areas:  Little Rock/North Little Rock, Conway, and Pine Bluff (Dkt. No. 12-1, ¶ 9).  Plaintiffs assert that defendants actively recruited hundreds of Arkansas consumers, including many in the Eastern District of Arkansas, through live, interactive video calls (Dkt. Nos. 1, ¶¶ 24, 27, 28, 31, 34-38, 41, 42; 12, at 8 n.26).  The record before the Court indicates that defendants, as individuals and acting in concert, held online Zoom meetings during which interactive chats occurred whereby questions could be asked and answered, sent email messages, sent mass text messages, and encouraged word-of-mouth recruiting to solicit Arkansas residents to go into Arkansas communities to recruit Arkansans to join BINT; joining BINT required the payment of fees, along with the payment of a monthly fee, and more fees could be paid "to advance" in BINT in lieu of recruiting new members to join (Dkt. Nos. 1, ¶¶ 19-23; 12-4, ¶¶ 2, 3, 5, 7-8).

## II.     Personal Jurisdiction

Defendants seek dismissal based on their claim that the Court does not have personal jurisdiction over them because, according to defendants:  (1) they lack the necessary minimum contacts with Arkansas for the Court to assert personal jurisdiction, and (2) the Court asserting personal jurisdiction would "offend traditional notions of fair play and substantial justice" (Dkt. No. 11, ¶ 9).

### A.     Standard Of Review

Plaintiffs "survive a motion to dismiss for lack of personal jurisdiction . . . when [they] make a *prima facie* showing of personal jurisdiction over the defendant."  *Digi-Tel Holdings v.*

*Protec Telecoms.*, 89 F.3d 519, 522 (8th Cir. 1996).  Such a *prima facie* showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto."  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004).

The party seeking to establish personal jurisdiction carries the burden of proof.  *Laseraim Tools, Inc. v. SDA Mfg., LLC*, 624 F.Supp.2d 1027, 1029 (E.D. Ark. 2008).  However, personal jurisdiction over defendant need not be proved by a preponderance of the evidence until trial or until the Court holds an evidentiary hearing.  *Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).  "If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party."  *Id.*

In a federal question case, a federal court has personal jurisdiction over defendant if either federal law or the law of the forum state authorizes service of process upon that defendant.  *Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 104-05 (1987).  Federal laws authorizing service of process must accord with the Fifth Amendment's Due Process Clause, and state laws authorizing service of process must not offend the Due Process Clause of the Fourteenth Amendment.  *Dakota Indus., Inc.*, 946 F.2d at 1389 n.2; *see also Daimler AG v. Bauman*, 571 U.S. 117, 120-22 (2014).  Due process in the context of personal jurisdiction requires that defendant have the necessary "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).  When a defendant is haled into a federal court under a federal statute, the Eighth Circuit Court of Appeals directs courts to analyze the nature and the extent of contacts with the United States as a whole to determine if any federal court situated in the United States can exercise jurisdiction over a defendant.  *In re Federal Fountain,*

*Inc.*, 165 F. 3d 600 (8th Cir. 1999) (holding that due process under the Fifth Amendment requires a party to have "sufficient contacts with the United States" as a whole).

When determining if a party maintains the necessary minimum contacts with a forum to assert personal jurisdiction, Courts must consider the "quality and nature" of the party's activities. *Int'l Shoe Co.*, 326 U.S. at 319.  Personal jurisdiction does not exist when the forum "has no contacts, ties, or relations" to the defendant.  *Id*.  The Supreme Court has held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  In *World-Wide Volkswagen Corp. v. Woodson*, the Supreme Court concluded that "the defendant's conduct and connection with the forum State" were such that he could "reasonably anticipate being haled into court there."  444 U.S. 286, 297 (1980).  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated,' contacts."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

When deciding a personal jurisdiction issue, this Court considers five factors to determine the sufficiency of a defendant's contacts, with "the first three factors being of primary importance." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).  The five factors as identified by the Eighth Circuit are:  "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."  *Digi-Tel Holdings*, 89 F.3d at 522-23.  The first three factors are closely related and can be considered together.  *Id*. at 523.

Courts have elaborated on the third factor—the relationship of the cause of action to the contacts—to distinguish between general and specific jurisdiction in the context of personal jurisdiction and state-based causes of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). "General jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993). General jurisdiction is appropriate for a non-resident corporate defendant whenever a corporate defendant's "affiliations with the [forum] are so continuous and systematic as to render it essentially at home in the forum State." *Daimler*, 571 U.S. at 138-39. Typically, a corporate defendant is "essentially at home" in the state of its incorporation or in the state in which it has its principal place of business. *Id.* at 137.

Specific jurisdiction, on the other hand, is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Burger King*, 471 U.S. at 472). The Supreme Court recently clarified how courts should determine if an injury "arise[s] out of or relate[s] to" a defendant's contacts with the forum in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1026 (2021). In *Ford*, the Supreme Court bifurcated the arising out of or relating to inquiry and directed lower courts to allow an assertion of personal jurisdiction when a suit either: (1) arises out of the defendant's contacts with the forum, as in the defendant's contacts caused the alleged injury, or (2) the defendant's contacts related to the alleged injury, as in the defendant had a "strong 'relationship . . . [to] the forum.'" *Id.* at 1026-28.

Even when a defendant does not have the necessary minimum contacts with the forum state, certain courts employ the federal common-law doctrine of pendent personal jurisdiction over

a defendant if the claim arises out of the same common nucleus of operative fact with a federal law claim that authorizes national service of process. *See generally Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018) (explaining the idea of pendent personal jurisdiction as allowing state-law claims to be heard by a federal court when those claims arise out of a common nucleus of operative fact with federal claims in which nationwide service of process is authorized); *Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*, 437 F. Supp. 3d 693, 704 (D. Minn. 2020) (exercising pendent personal jurisdiction over a defendant in a plaintiff's federal patent lawsuit that included state common-law business tort claims).

### B.   Analysis

Defendants argue that this Court's exercise of personal jurisdiction over them on all of plaintiffs' claims "will violate due process because (1) [the] [d]efendants do not have minimum contacts with Arkansas and (2) maintaining this suit in Arkansas will offend traditional notions of fair play and substantial justice" (Dkt. No. 10, ¶ 3). Plaintiffs respond by pointing to the fact that the FTC brings this claim under the FTC Act and the CRFA, meaning that defendants "need only have sufficient minimum contacts with the United States," for this United States District Court to exercise personal jurisdiction over them (Dkt. No. 12, at 10-11). Plaintiffs maintain that defendants satisfy the Fourteenth Amendment's minimum contacts requirement to allow this Court to exercise personal jurisdiction over defendants with regard to plaintiffs' state-law claims, as defendants "have substantial contacts with" Arkansas and "have purposefully availed themselves" of doing business in Arkansas (*Id.*, at 12). The Court agrees with plaintiffs and concludes that the FTC and the State of Arkansas have demonstrated that defendants have sufficient minimum contacts with the United States as a whole and the state of Arkansas to allow this Court to exercise personal jurisdiction over defendants.

### 1.    Claims Under FTC Act And CRFA[1]

Though the Supreme Court has yet to elaborate on whether "a federal court [can] exercise personal jurisdiction, consistent with the Fifth Amendment, based on an aggregation of the defendant's contacts with the Nation as a whole," the Eighth Circuit has provided the framework for dealing with such an inquiry. *Omni Capital Int'l*, 484 U.S. at 103 n.5; *In re Federal Fountain*, 165 F. 3d at 601-02. The Eighth Circuit announced in *In re Federal Fountain* that it would "align [itself] . . . with virtually every other court" that had addressed nationwide service of process and personal jurisdiction. 165 F. 3d at 601-02. Specifically, the Eighth Circuit, sitting *en banc*, held with regard to Federal Rule of Bankruptcy Procedure 7004(d) that, where Congress authorizes nationwide service of process, any federal district court may exercise personal jurisdiction over the defendant. *Id.*

Judge Morris Sheppard Arnold, writing for the majority, characterized the inquiry relating to fairness and personal jurisdiction as centering on "the fairness of the exercise of power by a particular sovereign." *Id.* at 602. Judge Arnold quoted Justice Scalia's opinion in *Burnham v. Superior Court of California* and the Seventh Circuit case of *Fitzsimmons v. Barton* when announcing that "there can be no question" that a United States Court, wherever situated, can exercise personal jurisdiction over a defendant without offending the Fifth Amendment's Due Process Clause when that defendant has "sufficient contacts with the United States" by virtue of her physical presence in the forum or through the maintenance of contacts. 165 F. 3d at 602 (quoting 495 U.S. 604, 619 (plurality opinion); 589 F.2d 330, 333 (7th Cir. 1979)).

---

[1] The FTC has alleged three counts against defendants under § 5 of the FTCA Act, 15 U.S.C. § 45 (Counts I-III) (Dkt. No. 1, at 24-25). The FTC and the State of Arkansas have jointly alleged a count concerning defendants' alleged violations of the CRFA, 15 U.S.C. § 45b (Count IV) (Dkt. No. 1, at 26-27).

Defendants dismiss the precedential effect of *Federal Fountain* and claim it to be overly broad and not on point (Dkt. No. 16, ¶ 10).  In part, they ask this Court to consider the holding of *Burkhart v. Medserv Corporation*, a Western District of Arkansas case.  916 F. Supp. 919, 922 (W.D. Ark. 1996).  In *Burkhart*, the presiding judge concluded that, despite The Employee Retirement Income Security Act of 1974's ("ERISA") provision allowing for national service of process, the due process analysis still required a defendant to have the necessary minimum contacts with the forum state.  *Id.*  The analytical framework described in *Burkhart* applied the standard specifically overturned by the Eighth Circuit *en banc* in *Federal Fountain.*  165 F. 3d at 601; 916 F. Supp. at 922.  More recently, even courts in the Western District of Arkansas have applied the *Federal Fountain* approach to ERISA personal jurisdiction questions.  *See Administrative Committee of Wal-Mart Stores, Inc. Associate's Health and Welfare Plan v. Soles*, 204 F.Supp. 2d 1184 (W.D. Ark. 2002).

This Court concludes that *Burkhart* does not control; instead, the standard announced in *Federal Fountain* controls this Court's analysis of personal jurisdiction in the context of federal law authorizing national service of process in the Eighth Circuit.  165 F. 3d at 601-02.  Defendants offer no meaningful reason for this Court to depart from the *Federal Fountain* approach here.

Given the *Federal Fountain* holding, the proper legal inquiry regarding plaintiffs' FTC Act and CRFA claims requires this Court to determine:  (1) whether the relevant provisions of federal law authorize federal service of process; (2) if so, whether the Due Process Clause of the Fifth Amendment permits a court to exercise personal jurisdiction.  165 F. 3d at 601-02.

In the present case, both the FTC Act and the CRFA authorize nationwide service of process.  15 U.S.C. §§ 45b(e)(5)(B); 53(b).  Furthermore, the Fifth Amendment's Due Process clause is satisfied by virtue of defendants' presence in the United States; Mr. and Mrs. Moore are

residents of an American state, Texas, and BINT LLC, by virtue of being a Texas-based limited liability company, is located in the United States (Dkt. No. 10, ¶ 4).  *In re Federal Fountain*, 165 F. 3d at 601-02 (citing *Burnham*, 495 U.S. at 619 (plurality opinion)).  Given these facts, viewed in the light most favorable to plaintiffs and resolving all factual conflicts in their favor, plaintiffs sufficiently allege that this Court can exercise personal jurisdiction over defendants with regard to their FTC Act and CRFA claims.

Even if the traditional minimum contacts analysis is required as defendants argue, for the reasons explained in this Order, the Court finds the traditional minimum contacts are present at this stage of the litigation for this Court to exercise personal jurisdiction over defendants without offending traditional notions of fair play and substantial justice.

### 2.    Claims Under Arkansas DTPA[2]

Defendants also assert that this Court lacks personal jurisdiction over them with respect to the State of Arkansas's claims under the Arkansas DTPA.  A court may exercise personal jurisdiction over an out-of-state defendant on a state-law claim in two instances:  (1) the state's long-arm statute authorizes the exercise of jurisdiction over nonresidents and the nonresident defendant's due process rights are not violated or (2) "a federal statute authorizes nationwide service of process, and the federal and state-law claims derive from a common nucleus of operative fact."  *Charles Schwab Corp.*, 883 F.3d at 88 (explaining the idea of pendent personal jurisdiction as allowing state-law claims to be heard by a federal court when those claims arise out of common nucleus of operative fact with federal claims in which nationwide service of process is allowed); *Van Praag v. Columbia Classics Corp.*, 849 F.2d 1106, 1108 (8th Cir. 1988) (laying out the two-

---

[2]  The State of Arkansas brings three counts against defendants alleging violations of the Arkansaas DTPA, Ark. Code Ann. §§ 4-88-101 *et seq.* (Counts V-VIII) (Dkt. No. 1, at 27-30).

part test for the assertion of personal jurisdiction under the *International Shoe* framework). Plaintiffs urge the Court to analyze the current case through the lens of the minimum contacts analysis announced in *International Shoe v. Washington* (Dkt. No. 12, at 8-11). 326 U.S. at 316. However, in addition to that analysis, the Court, for the sake of judicial economy, raises the doctrine of pendent personal jurisdiction as an alternative justification for its exercising personal jurisdiction over defendants regarding the state-law claims.

### i.      Due Process And Arkansas DTPA Claims

Courts may assert personal jurisdiction over out-of-state defendants on state-law claims when:  (1) state law authorizes the exercise of such jurisdiction and (2) defendants have the necessary "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. Personal jurisdiction may be classified as general or specific depending upon the nature and extent of the entities' contacts. *Daimler*, 571 U.S. at 138-39. Neither party argues that defendants are essentially at home in Arkansas, and the Court sees no indication that they are (Dkt. Nos.11; 12). For this reason, the Court examines defendants' contacts with Arkansas to determine whether the Court may permissibly assert personal jurisdiction over defendants specific to the allegations in this case.

On the record before the Court, it is clear that the first step of the jurisdictional inquiry is satisfied. Arkansas Code Annotated § 16-4-101(B) permits courts to exercise personal jurisdiction over all parties "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution."

The Court must next determine if defendants have the necessary minimum contacts with the forum so as to not offend the Due Process Clause of the Fourteenth Amendment. The Court

does this by applying the Eighth Circuit's five factor personal jurisdiction test. *Henry L. Firm v. Cuker Interactive*, LLC, 950 F.3d 528, 532 (8th Cir. 2020). That test includes examining: (1) the nature and quality of the contacts, (2) the quantity of the contacts, (3) the relationship of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience or inconvenience of the parties. *Id.* Plaintiffs allege in their complaint that defendants have transacted business in this district (Dkt. No. 1, ¶¶ 10-12). The Court accepts this allegation as true at this stage of the proceeding. Further, the record before the Court indicates plaintiffs have demonstrated that defendants satisfy this requirement (Dkt. No. 12-1, ¶ 7-10). Defendants, as individuals and acting in concert, transacted vast sums of money from the Eastern District of Arkansas for initial membership, ongoing fees, and payment in lieu of completing tasks "to advance" in BINT; set up online seminars attended by those in Arkansas; engaged in interactive chats with individuals in Arkansas about the business; sent email messages directed to individuals in Arkansas about the business; sent text messages directed to individuals in Arkansas about the business; and recruited Arkansans who were defendants' business liaisons in the Eastern District of Arkansas to recruit others in an attempt to expand BINT's footprint in the Eastern District of Arkansas (Dkt. Nos. 1, ¶¶ 10-53; 12-1, ¶¶ 8-10; 12-4, ¶¶ 2, 3-5, 7-8). Almost 300 of BINT's Arkansas contacts complained to the FTC about BINT – 33% of all complaints filed (Dkt. No. 12-1, ¶ 8). The record before the Court indicates that plaintiffs' cause of action arises out of defendants' contact with the forum, as defendants' actions allegedly cost Arkansans $800,000 (*Id.*, ¶ 9). *Henry L. Firm*, 950 F.3d at 532; *see also Ford*, 141 S. Ct. at 1026-28. Additionally, the evidence suggests that defendants each, and together in concert, "purposefully direct[ed]" their actions toward Arkansas, and the Court believes that Arkansas "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries [allegedly] inflicted" by

defendants.[3]  *Burger King Corp.*, 471 U.S. at 473; *Henry L. Firm*, 950 F.3d at, 532.  That "manifest interest," the sheer number of Arkansans allegedly targeted by defendants, the alleged harm caused to plaintiffs by defendants, and the convenience of those victims and plaintiffs, in the Court's view, all weigh in favor of finding that defendants have the necessary minimum contacts with Arkansas. *Burger King Corp.*, 471 U.S. at 473; *Henry L. Firm*, 950 F.3d at 532.

Further, the Court determines that, along with being authorized by Arkansas's long-arm statute, exercising personal jurisdiction over defendants comports with the strictures of the Due Process Clause.  *See World–Wide Volkswagen,* 444 U.S. at 291.  The fundamental inquiry is whether the defendant has "purposefully availed" itself of the "benefits and protections" of the forum state, *see Burger King Corp.,* 471 U.S. at 482, to such a degree that it "should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp.,* 444 U.S. at 297.  Here, on the record before it at this stage, the Court determines defendants' connections with Arkansas were not isolated, random, fortuitous, or attenuated contacts.  Instead, the Court determines that defendants' contacts with Arkansas were deliberate, establishing a substantial connection with Arkansas such that defendants could reasonably anticipate being haled into court in Arkansas.

For these reasons, the Court rules that it can assert personal jurisdiction over each defendant without offending the Fourteenth Amendment.  *Int'l Shoe Co. v. Washington*, 326 U.S. at 316.

---

[3]  The Court recognizes that BINT LLC is a non-living entity that cannot, on its own reach into the forum state.  However, plaintiffs allege facts sufficient to show that separate defendants Mr. and Mrs. Moore, as co-founders, promoters, and managing members of BINT LLC, acted as agents of BINT LLC in a way sufficient to establish its contacts with Arkansas.  *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595–96 (8th Cir. 2011).

ii.          **Pendent Personal Jurisdiction And Arkansas DTPA Claims**

In the alternative, even if one or more defendants lack the necessary minimum contacts with Arkansas, this Court determines it has pendent personal jurisdiction over defendants for purposes of the Arkansas DTPA claims.  The federal common law doctrine of pendent personal jurisdiction allows a court to exercise personal jurisdiction over a defendant if a pendent state-law claim arises out of the same common nucleus of operative facts as a federal claim derived from a statute authorizing national service of process.  *Charles Schwab Corp.*, 883 F.3d at 88; *United States v. Botefuhr*, 309 F.3d 1263, 1272–73 (10th Cir. 2002).  Though not authorized by statute, several circuit courts of appeal and federal district courts have addressed this issue and found the application of pendent personal jurisdiction lawful.  *Botefuhr*, 309 F.3d at 1272-74.  *See also Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 123 (3d Cir. 2020) (observing that the Third Circuit Court of Appeals recognized pendent personal jurisdiction in *Robinson v. Penn Central Co.*, 484 F.2d 553 (3d Cir. 1973)); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1339–40 (Fed. Cir. 2008) (explaining that the Federal Circuit has long recognized the concept of pendent personal jurisdiction); *Helmer v. Doletskaya*, 393 F.3d 201, 209–10 (D.C. Cir. 2004) (noting that the D.C. Circuit adopted the concept of pendent personal jurisdiction in *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 4–5 (D.C. Cir. 1977)); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) (adopting the doctrine of pendent personal jurisdiction); *Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 449–50 (7th Cir. 2000) (holding that "the same logic that lies behind the supplemental jurisdiction statute for purposes of subject matter jurisdiction, 28 U.S.C. § 1367, supports the application of supplemental personal jurisdiction over claims that are properly before . . . [a] court under § 1367"); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628–29 (4th Cir. 1997) (holding that "[w]hen a federal statute

authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative fact."); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (holding that a "district court may assert personal jurisdiction over the parties to the related state-law claims even if personal jurisdiction is not otherwise available . . . ." provided that "a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative fact" (internal quotation omitted)).  In adopting the theory of pendent personal jurisdiction, these circuits justify its application by pointing to the fact that it is wholly reasonable for a defendant to appear in a single forum to address all claims in "the same suit arising out of a common nucleus of operative facts." *Action Embroidery Corp.*, 368 F.3d at 1181.

Though this Court can find no instance in which the Eighth Circuit has addressed the doctrine of pendent personal jurisdiction, district courts throughout this circuit have consistently applied the doctrine across a wide spectrum of cases.  *See, e.g., Willis*, 437 F. Supp. 3d at 704 (concluding it was appropriate for the court to exercise pendent personal jurisdiction over a defendant in a federal patent case in which plaintiff also brought a pendent state common-law business tort claim); *OPD Holdings, LLC v. Otiko*, No. 4:17-cv-04042-KES, 2018 WL 11237900, at *12–13 (D.S.D. Jan. 26, 2018) (asserting pendent personal jurisdiction over a defendant in a case involving *inter alia* a trademark infringement and breach of contract); *Aviva Life & Annuity Co. v. Davis*, 20 F. Supp. 3d 694, 703 (S.D. Iowa 2014) (noting that "it is well-settled outside of the Eighth Circuit that if a federal district court has personal jurisdiction over a defendant due to a federal statute that authorizes nationwide service of process, that court also has discretion to

exercise 'pendent personal jurisdiction' over the defendant for any state claims that 'derive from a common nucleus of operative fact' as the federal claim"); *Gatz v. Ponsoldt*, 271 F. Supp. 2d 1143, 1154 (D. Neb. 2003) (holding  pendent personal jurisdiction applicable in cases involving both Racketeer Influenced and Corrupt Organizations Act ("RICO") claims and state-law claims); *Hirt v. UM Leasing Corp.*, 614 F. Supp. 1066, 1070 (D. Neb. 1985) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, (1966), for the proposition that "[o]nce the Court finds that it has personal jurisdiction over defendants with respect to certain federal claims, and further finds that the state claims are pendent in nature. . .  the Court necessarily has personal jurisdiction over such pendent state claims"); *Rose v. Arkansas Valley Env't & Util. Auth.*, 562 F. Supp. 1180, 1213 (W.D. Mo. 1983) (noting that it is the "prevailing view" to allow pendent personal jurisdiction with regard to state-law claims which are connected to claims arising out of the 1934 Securities Exchange Act). This Court relies on the opinions cited above, adopts the doctrine of pendent personal jurisdiction, and applies it to plaintiffs' Arkansas state law claims in the instant case.

In applying the theory of pendent personal jurisdiction to the case at bar, the Court is required to determine whether the Arkansas DTPA claims arise from a common nucleus of operative fact as a federal claim derived from a statute authorizing national service of process. *Charles Schwab Corp.*, 883 F.3d at 88; *Botefuhr*, 309 F.3d at 1272–73; *Willis*, 437 F. Supp. 3d at 704; *Davis*, 20 F. Supp. 3d at 703.  State and federal claims share a common nucleus of operative fact when the nature of the claims is so similar that a defendant would expect for every claim to be tried in one judicial proceeding.  *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011) (citing *Gibbs*, 383 U.S. at 725).

The record evidence before the Court indicates that the alleged violations of federal law and Arkansas law arise from defendants' operation of the "blessing loom" pyramid scheme (Dkt.

16

No. 1, ¶ 1).  Each count laid out in the complaint turns on the resolution of a core set of shared facts regarding defendants' alleged misrepresentations, their perpetuation of an alleged illegal pyramid scheme, and the harm defendants allegedly caused to Arkansas consumers (*Id.*, ¶¶ 57-81).  Viewing all allegations in the complaint and facts in the record in the light most favorable to the non-moving party, here plaintiffs, the Court concludes that the FTC Act, CRFA, and the Arkansas DTPA claims all arise out of a common nucleus of operative fact, allowing the Court to assert pendent personal jurisdiction over defendants regarding the Arkansas DTPA claims.  *ABF Freight*, 645 F.3d at 963; *see also Charles Schwab Corp.* 883 F.3d at 88; *Botefuhr*, 309 F.3d at 1272–73.

### III.    Venue And Defendants' Motion To Transfer

#### A.    Standard Of Review

Defendants argue that the Eastern District of Arkansas is not the proper venue for this action (Dkt. Nos. 10, ¶¶ 5-9; 11, ¶¶ 18-20).  Defendants request that the case be dismissed for lack of venue or transferred to the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1406, based on the residency of defendants (Dkt. Nos. 10, ¶ 10; 11, ¶¶ 12-18).  In plaintiffs' brief in opposition, plaintiffs disagree that venue is improper and oppose the motion to transfer (Dkt. No. 12, at 11-21).

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss an action where venue in that court is improper.  Fed. R. Civ. P. 12(b)(3).  Once a defendant raises the issue of proper venue by motion, the burden of proof is on the plaintiff to sustain venue. *See Cohen v. Newsweek, Inc.,* 312 F.2d 76, 78 (8th Cir. 1963) (determining that district court properly held that plaintiff-appellant had the burden of establishing venue); *Beckley v. Auto Profit Masters, L.L.C.*, 266 F. Supp. 2d 1001, 1003 (S.D. Iowa 2003) (same).

Where there are multiple claims involved, venue must be proper as to each claim.  *See Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir. 1985).

Whether venue is "wrong" or "improper" is generally governed by 28 U.S.C. § 1391.  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 55 (2013).  However, the FTC Act contains a special provision related to venue that deems venue proper in cases where the defendant "transacts business."  15 U.S.C. § 53(b)(2).  Moreover, by virtue of 15 U.S.C. § 53(b)(1), the "transacts business" standard applies to any and all provisions of law "enforced by the Federal Trade Commission."  The Supreme Court has construed "transacts business" broadly for the purposes of establishing venue, holding that the "transacts business" standard contained in anti-trust statues like the FTC Act go farther than legislation and judicial opinions defining the concepts of "carrying on business" or being "found" in judicial districts.  *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948); *see also The Antitrust Laws*, FED. TRADE COMM'N., https://www.ftc.gov/tips-advice/competition-guidance/guide-antitrust-laws/antitrust-laws (explaining the history and the interrelatedness of the three core anti-trust laws:  the Sherman, FTC, and Clayton Acts).

Counts V to VIII in plaintiffs' complaint relying on state law are governed by the general venue statute found at 28 U.S.C. § 1391(b), which deems venue proper in three circumstances:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b) or if the case is subject to some other venue provision.  15 U.S.C.

§ 53; *Atl. Marine*, 571 U.S. at 56.  If the case falls into one of the categories or is authorized by some other statue, venue is proper; if not, venue is improper, and the case must be dismissed or transferred under 28 U.S.C. § 1406(a).  *Atl. Marine*, 571 U.S. at 56.  Under § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Where venue is proper, a Court may grant a motion to transfer under 28 U.S.C. § 1406(a) if that party can show that the interest of justice, the convenience of the parties, and the convenience of the witnesses justify a transfer.  28 U.S.C. § 1404(a).  *See generally Atl. Marine*, 571 U.S. at 63; *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 691 (8th Cir.1997).  District courts may also consider any relevant "case-specific factors" in determining if a transfer is warranted.  *In re Apple, Inc.,* 602 F.3d 909, 912 (8th Cir. 2010) (*per curiam*).  The party seeking the transfer, here defendants, bears a "heavy burden" in justifying the request to transfer a case, as plaintiffs generally enjoy the privilege of filing in the most advantageous forum.  *Atl. Marine*, 571 U.S. at 63; *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 954 (D. Minn. 2014).  To satisfy that "heavy" burden, the movant must demonstrate that the relevant factors weigh "strongly" in its favor, as "the plaintiff's choice of forum should rarely be disturbed."  *Lehman v. Humphrey Cayman, Ltd*., 713 F.2d 339, 341 (8th Cir. 1983); *Klatte*, 995 F. Supp. 2d at 954-55.

       **B.**    **Analysis**

           **1.**      **Proper Venue Under FTC Act And CRFA**

As discussed above, 15 U.S.C. § 53(b) deems venue to be proper in any judicial district where a defendant "transacts business."  This standard applies to both the FTC Act and CRFA.  15 U.S.C. § 53(b)(1).  This grant of venue applies to "any provision of law enforced by" the FTC.  15

U.S.C. § 53(b)(1).  The CRFA is to be treated "as a violation of a rule defining an unfair or deceptive act or practice described under section 18(a)(1)(B)" of the FTC Act.  15 U.S.C. § 45b.

For a company to "transact business," courts apply the "practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character.'"  *Scophony*, 333 U.S. at 807.  Plaintiffs allege in their complaint that defendants have transacted business in this district (Dkt. No. 1, ¶¶ 10-12).  The Court accepts this allegation as true at this stage of the proceeding.  Further, the record before the Court indicates plaintiffs have demonstrated that defendants satisfy this requirement (Dkt. No. 12-1, ¶ 7-10).  Defendants, as individuals and acting in concert, transacted vast sums of money from the Eastern District of Arkansas for initial membership, ongoing fees, and payment in lieu of completing tasks "to advance" in BINT; set up online seminars attended by those in Arkansas; engaged in interactive chats with individuals in Arkansas about the business; sent email messages directed to individuals in Arkansas about the business; sent text messages directed to individuals in Arkansas about the business; and recruited Arkansans who were defendants' business liaisons in the Eastern District of Arkansas to recruit others in an attempt to expand BINT's footprint in the Eastern District of Arkansas (Dkt. Nos. 1, ¶¶ 10-53; 12-1, ¶¶ 8-10; 12-4, ¶¶ 2, 3-5, 7-8).  More than 300 Arkansas consumers have complained to plaintiffs regarding defendants' activities, representing hundreds of thousands of dollars in income that plaintiffs claim defendants bilked from Arkansas consumers (Dkt. Nos. 12-1; 12-5).  The Court concludes that defendants "transacted business" within the meaning of the FTC Act in the Eastern District of Arkansas based on plaintiffs' allegations in their complaint and the current record before it, making venue proper under the FTC Act and the CRFA.  15 U.S.C. § 53(b); *Scophony*, 333 U.S. at 807.

2.          **Proper Venue Under 28 U.S.C. § 1391(b)**

Plaintiffs refute defendants' characterization that the Eastern District of Arkansas fails to satisfy the venue requirements of 28 U.S.C. § 1391 by pointing to subsection (b) of the statute (Dkt. Nos 11. ¶¶ 12-17; 12, at 14-15).  Subsection (b) of § 1391 establishes that venue is proper in a judicial district where a "substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b).  Plaintiffs maintain that each count in the complaint satisfies the requirements of § 1391(b) because "[d]efendants actively recruited hundreds of Arkansan consumers, including many in the Eastern District[,] . . . directed these consumers' actions in this district to further their illegal operation[, and in so doing have] . . . harmed numerous residents of Arkansas . . . ." (Dkt. No. 12, at 15).  Governing case law supports plaintiffs' contentions that the facts before the Court demonstrate that the Eastern District of Arkansas can serve as a proper venue.  *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 185 (1979); *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) (citing *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir. 1992), and noting how the Second Circuit construed § 1391(b)(2)).

In *Leroy v. Great Western United Corporation*, the Supreme Court determined that multiple districts may be assigned the "locus of the claim" when there are multiple locations where the convenience of defendants, availability of witnesses, and the accessibility of relevant evidence is equally plausible.  *Leroy*, 443 U.S. at 185.  The 1990 Judicial Improvement Act altered the *Leroy* inquiry and directed courts to ask, "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts."  *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994).  The inquiry is defendant-focused, as § 1391(b) "protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'"  *Steen v. Murray*, 770 F.3d 698, 702 (8th Cir.

2014).  The venue statute should be construed to "protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Atl. Marine*, 571 U.S. at 64 n. 7 (citing *Leroy*, 443 US. at 183-84).  However, where venue is proper, "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous." *Atl. Marine*, 571 U.S. at 63.

Looking to the governing case law, the allegations in plaintiffs' complaint, and the record before it at this stage of the litigation, the Court concludes that plaintiffs have demonstrated "a substantial connection" between the Eastern District of Arkansas and plaintiffs' claims.  While it is impermissible for the Court to assign the locus of a claim based on the effects of defendants' actions, defendants' actions here did more than cause negative effects in the Eastern District of Arkansas.  *Steen*, 770 F.3d at 704.  Plaintiffs allege in their complaint that defendants have transacted business in this district (Dkt. No. 1, ¶¶ 10-12).  The Court accepts this allegation as true at this stage of the proceeding.  Defendants reached out to and conducted business in Arkansas, as alleged in plaintiffs' complaint (Dkt. No. 1, ¶¶ 10-53).  Defendants recruited hundreds of Arkansas consumers using online platforms like Zoom and band.us (Dkt. Nos. 1, ¶ 23; 12-4, ¶ 8).  Defendants, as individuals and acting in concert, transacted vast sums of money from the Eastern District of Arkansas for initial membership, ongoing fees, and payment in lieu of completing tasks "to advance" in BINT; set up online seminars attended by those in Arkansas; engaged in interactive chats with individuals in Arkansas about the business; sent email messages directed to individuals in Arkansas about the business; sent text messages directed to individuals in Arkansas about the business; and recruited Arkansans who were defendants' business liaisons in the Eastern District of Arkansas to recruit others in an attempt to expand BINT's footprint in the Eastern District of Arkansas (Dkt. Nos. 1, ¶¶ 10-53; 12-1, ¶¶ 8-10; 12-4, ¶¶ 2, 3-5, 7-8).  More than 300 Arkansas consumers have complained to plaintiffs regarding defendants' activities, representing hundreds

of thousands of dollars in income that plaintiffs claim defendants bilked from Arkansas consumers (Dkt. Nos. 12-1; 12-5).

Taken together, the Court determines that defendants' actions are sufficient to satisfy § 1391(b).  For these reasons, the Court determines that venue is proper for all defendants and all claims in the Eastern District of Arkansas in this case pursuant to § 1391(b).

### 3.      Proper Venue Related To BINT LLC

BINT LLC is a Texas Limited Liability Company (Dkt. No 11, ¶ 10).  Though the Court has already demonstrated BINT LLC, along with the other defendants, is amenable to suit in the Eastern District of Arkansas per 28 U.S.C. § 1391(b)(2), the Court takes this opportunity to also note that § 1391(c)(2) of the venue statute provides further justification for venue being proper with regard to BINT LLC (Dkt. No. 12, at 15).  Section 1391(c)(2) provides:

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.

28 U.S.C. § 1391(c)(2).  The Court established personal jurisdiction over BINT LLC.  Thus, venue is proper with regard to plaintiffs' claims against BINT LLC.  28 U.S.C. § 1391(c)(2).

### 4.      Defendants' Motion To Transfer

As the Court has determined venue to be proper, it will not transfer this case pursuant to 28 U.S.C. § 1404(a).  Generally "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous." *Atl. Marine*, 571 U.S. at 63.  As discussed above, parties seeking a transfer bear a heavy burden of showing that the convenience to the parties, witnesses, and the interest of justice is substantially better served in a forum different from that chosen by plaintiff. *Klatte*, 995 F. Supp. 2d at 954.  Defendants attempt to justify a transfer by citing their residency and arguing that the majority of the witnesses and experts reside in the Eastern District of Texas

(Dkt. No. 11, ¶¶ 18-19).  The Court finds no reason in the record to doubt the residency of defendants.  Thus, the Court examines the availability of witnesses argument.

In examining the availability of witnesses, at this stage of the litigation, the Court is skeptical of defendants' argument that the "majority of witnesses will be located in the Eastern District of Texas." (Dkt. No. 11, ¶ 19).  Almost 300 Arkansans, more than any state in the country, filed complaints with the FTC regarding defendants' actions (Dkt. No. 12-1, ¶ 8).  Weighing the fact that there are close to 300 potential Arkansas witnesses along with the accepted legal principle that plaintiffs' choice of forum should rarely be disturbed against defendants' arguments for transfer, the Court cannot grant defendants' motion to transfer venue.  Aside from making a conclusory statement, defendants have yet to demonstrate what evidence is located in, whether any specific witnesses reside in, and which experts currently reside in the Eastern District of Texas (Dkt. Nos. 11, ¶ 19; 12-1, ¶ 8).  *Lehman*, 713 F.2d at 341.

Based on the filings, it appears as though defendants tether their argument that venue is improper to their own residency and their inconvenience of litigating in Little Rock, Arkansas (Dkt. No. 10, ¶ 1; 11, ¶ 19).  However, the record before the Court indicates that defendants allegedly caused great harm to a large number of people living in the Eastern District of Arkansas (Dkt. No. 12-1, ¶¶ 8-9).  That action occurred in the Eastern District of Arkansas, and those harmed are more conveniently served here in the Eastern District of Arkansas (*Id.*).  Their convenience as potential witnesses and victims, on the facts before the Court, outweighs defendants' convenience concerns.  *Lehman*, 713 F.2d at 341; *Klatte*, 995 F. Supp. 2d at 954.

## IV.   Other Outstanding Motions

Since filing their motion to dismiss, defendants have filed several motions to prevent discovery until the resolution of their motion to dismiss or transfer venue (Dkt. Nos. 18; 23; 26).

As the Court has now resolved the motion to dismiss, it denies these motions as moot and directs the parties to consult the initial scheduling order for pending deadlines, to confer with one another, and then file motions as appropriate and if necessary to seek relief from the in-effect deadlines (Dkt. Nos. 17; 18; 23; 26).

V.     **Conclusion**

For the reasons set forth above, the Court denies defendants' motion to dismiss or transfer venue (Dkt. No. 10).  The Court also denies as moot defendants' outstanding motions that were contingent upon the resolution of the motion to dismiss or transfer venue (Dkt. Nos. 18; 23; 26).

It is so ordered this 31st day of March, 2022.

Kristine G. Baker
United States District Judge