UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>STATE OF ARKANSAS, *ex rel.*<br>TIM GRIFFIN,<br>ATTORNEY GENERAL,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>BINT OPERATIONS LLC, a limited liability company,<br><br>LASHONDA MOORE, individually and as an officer of BINT OPERATIONS LLC, and<br><br>MARLON DEANDRE MOORE, formerly known as MARLON DEANDRE MAIDEN, individually and as an officer of BINT OPERATIONS LLC,<br><br>　　　　Defendants. | Case No. 4:21-cv-00518-KGB<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE TESTIMONY OF STACIE BOSLEY, PH.D.** |

Table of Contents

TABLE OF AUTHORITIES ................................................................................................... iii
I.      Introduction ........................................................................................................................ 1
II.     Legal Standard ................................................................................................................... 2
III.    Dr. Bosley's Testimony is Helpful to the Court and Admissible. ..................................... 4
   a.   *Dr. Bosley's opinion offers economic analysis of evidence, not legal conclusions.* ..... 6
   b.   *Courts have routinely admitted similar expert testimony from Dr. Bosley and other pyramid experts.* ............................................................................................................ 9
   c.   *Dr. Bosley's expert testimony should be liberally admitted, as the Court will be more than capable of giving her testimony appropriate weight at a bench trial.* ................... 10
   d.   *Dr. Bosley's report includes many conclusions that Defendants do not challenge. These should not be stricken regardless of the Court's conclusion concerning the challenged testimony.* ............. 11
IV.    Conclusion ....................................................................................................................... 14

TABLE OF AUTHORITIES

**Cases**

*Adams v. Toyota Motor Corp.,* 867 F.3d 903, 915 (8th Cir. 2017), as corrected (Aug. 14, 2017) .......... 2
*Boeing Co. v. KB Yuzhnoye*, No. CV1300730ABAJWX, 2015 WL 12803452, at *3 (C.D. Cal. Nov. 3, 2015) ................................................................................................................................ 12
*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91, 113 S. Ct. 2786, 2795 (1993) ................ 2
*David E. Watson, P.C. v. United States*, 668 F.3d 1008 (8th Cir. 2012) ............................................. 4, 11
*Durham v. Lake Cnty. Indiana*, No. 2:13-CV-300-JEM, 2022 WL 2208121 (N.D. Ind. June 21, 2022) .................................................................................................................................................. 11
*FTC v. BurnLounge, Inc.*, 753 F.3d 878 (9th Cir. 2014) ................................................................. 8, 10
*FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 4950348, at *3 (D. Ariz. Oct. 25, 2021) .... 10
*FTC v. Vemma Nutrition Co.*, No. CV-15-01578-PHX-JJT, 2015 WL 11118111, at *3 (D. Ariz. Sept. 18, 2015) ....................................................................................................................................... 10
*In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 67–69 (Bankr. N.D. Ill. 2002) ....................................... 12
*In re Zurn Pex Plumbing Prods. Liab. Litig. (In re Zurn),* 644 F.3d 604, 613 (8th Cir.2011) ............. 3, 4
*K-B Trucking Co. v. Riss International Corp.*, 763 F.2d 1148 (10th Cir. 1985) ..................................... 2
*Koscot Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975) ..................................................................... 9
*Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001) ....................................................... 2, 3
*Lee v. Andersen*, 616 F.3d 803, 808–09 (8th Cir. 2010) ......................................................................... 4
*Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006). .............................................. 3
*Rozo v. Principal Life Ins. Co.*, No. 4:14-cv-00463, 2020 WL 12968436, at *1–2 (S.D. Iowa Oct. 21, 2020) .............................................................................................................................................. 12
*Russell v. Whirlpool Corp.,* 702 F.3d 450, 456 (8th Cir. 2012) ............................................................. 4
*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir.2014) ................................................................................. 4
*UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 387 (E.D. Mich. 2006) .................................................. 12
*United States v. Brown*, 415 F.3d 1257, 1268–69 (11th Cir. 2005) ....................................................... 4
*United States v. City of Eastpointe*, 378 F. Supp. 3d 589, 613 (E.D. Mich. 2019) .............................. 11
*United States v. Diaz*, 876 F.3d 1194, 1198 (9th Cir. 2017) ................................................................. 5
*United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) ................................................................ 3
*United States v. Gold Unlimited*, 177 F.3d 472, 475 and 481 (6th Cir. 1999) .................................... 10
*United States v. Van Dyke*, 14 F.3d 415, 422 (8th Cir. 1994) ............................................................... 4
*WFC Holdings Corp. v. United States*, No. 07-cv-3320, 2010 U.S. Dist. LEXIS 24721 ..................... 15
*Window Specialists, Inc. v. Forney Enterprises, Inc.*, 47 F. Supp. 3d 53, 60 (D.D.C. 2014) ................ 12
*Wood v. 3M*, 112 F.3d 306 (8th Cir. 1997) ...................................................................................... 3, 14

**Rules**

FED. R. EVID. 702 .............................................................................................................................. 2, 5
FED. R. EVID. 704 .............................................................................................................................. 1, 4

I.      Introduction

In their Motion to Strike Testimony of Stacie Bosley, Ph.D. ("Defendants' Motion"), Defendants seek to exclude the expert testimony of the only expert in this matter—in its entirety—based on a meritless concern about only one of her multiple opinions.[1] Notably, Defendants do not raise a single concern about Dr. Bosley's qualifications. Nor do they attack her other opinions or their value to the Court in deciding this case.

Instead, Defendants' Motion focuses narrowly on a single issue: their assertion that Dr. Bosley's report includes an improper legal conclusion that infringed on the province of the Court. This argument is without merit, and the Court should decline to exclude Dr. Bosley's testimony on this basis.

Dr. Bosley is an economic expert in pyramid schemes, and Defendants do not contest her expert qualifications. In her report, she properly opined that BINT was a pyramid. Her opinions, and her in-depth analysis, will help the Court decide this case. As Dr. Bosley's expert report made clear, her testimony is based on analysis of the uncontested facts and economic principles. In conducting her analysis of the BINT scheme, she considered both the economic definition of a pyramid and applied economic analysis to factors that courts have identified as important in pyramid analysis. Such an approach does not infringe on the Court's role, and other courts have routinely accepted similar testimony. And, in any event, the Federal Rules make clear that Dr. Bosley's testimony is not inadmissible simply because it concerns an ultimate issue.[2] Having elected not to produce their own expert, to rebut the FTC's expert, or even to take Dr. Bosley's deposition, Defendants instead file a

---

[1] Doc. #89, Defendants' Motion to Strike Testimony of Stacie Bosley, Ph.D.

[2] *See* FED. R. EVID. 704.

swing-for-the-fences Motion in an effort to exclude her. But, as described within, the Motion misses badly, and the Court should reject it accordingly.

Moreover, even if Dr. Bosley's report included an improper legal conclusion, the proper remedy would not be to exclude it entirely, as Defendants request. This is especially true in this case, where the Court—and not a lay jury—will be the trier of fact. The Court is unquestionably capable of determining the weight that Dr. Bosley's testimony should be afforded. Accordingly, this Court should permit Dr. Bosley's report and testimony, as it will provide valuable assistance to the Court in ruling on this matter.

## II.    Legal Standard

The Federal Rules allow for expert opinion testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue."[3] The Supreme Court has held such testimony must be reliable and relevant.[4] The offering party bears the burden to establish that the expert's testimony meets the criteria of Rule 702 by a preponderance of the evidence.[5]

While the Supreme Court and Rule 702 provide that the Court acts as "gatekeeper" regarding expert testimony, this admissibility standard is liberal, and "cases are legion that, correctly, under

---

[3] FED. R. EVID. 702.

[4] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91, 113 S. Ct. 2786, 2795 (1993).

[5] *Adams v. Toyota Motor Corp.,* 867 F.3d 903, 915 (8th Cir. 2017), as corrected (Aug. 14, 2017), (citing *Daubert,* 509 U.S. at 594–95). *See also Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir.2001). Defendants also cite Federal Rule 403 as a basis for exclusion of Dr. Bosley's testimony. The FTC notes this is likewise a liberal standard. Caselaw is clear that the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used sparingly. *K-B Trucking Co. v. Riss International Corp*., 763 F.2d 1148, 18 Fed. R. Evid. Serv. (CBC) 682, 1985 U.S. App. LEXIS 20687 (10th Cir. 1985).

*Daubert*, call for the liberal admission of expert testimony."[6] In *Daubert*, the Supreme Court emphasized the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion' testimony."[7] Accordingly, the Eighth Circuit has held that expert opinion should be admitted if it "advances the trier of fact's understanding to any degree"[8] and "'doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'"[9]

This liberal admissibility standard is relaxed even more where the Court, rather than a lay jury, is the factfinder. When courts exclude expert testimony, it is typically tied to concerns of juries giving outsized weight to expert testimony.[10] As the Eighth Circuit has noted, "*Daubert* is meant to 'protect *juries* from being swayed by dubious scientific testimony.'"[11] In contrast, when the court is the factfinder, "'[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.'"[12] This is because a trial judge is "presumed capable of weighing evidence to

---

[6] *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (*citing United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011); *Wood*, 112 F.3d at 309 (holding that exclusion of expert's opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury") (internal quotation omitted).

[7] *Daubert*, 509 U.S. at 588 (internal quotations and citations omitted); *see also Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (Rule 702 "clearly is one of admissibility rather than exclusion") (internal quotation omitted).

[8] *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006).

[9] *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (quoting *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000)).

[10] *See, e.g., In re Zurn Pex Plumbing Prods. Liab. Litig. (In re Zurn),* 644 F.3d 604, 613 (8th Cir.2011). *See also Yarbrough v. ARC DBPPROP001, LLC*, No. 4:20-CV-000456-BRW, 2021 WL 8651321, at *6 (E.D. Ark. Sept. 13, 2021); *United States v. Brown*, 415 F.3d 1257, 1268–69 (11th Cir. 2005); and *Russell v. Whirlpool Corp.,* 702 F.3d 450, 456 (8th Cir. 2012).

[11] *In re Zurn Pex Plumbing Prods. Liab. Litig. (In re Zurn)*, 644 F.3d 604, 613 (8th Cir. 2011) (emphasis added).

[12] *Id.* (alteration in original) (*quoting United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir.2005)).

sift the important from the unimportant, and even the admissible from the inadmissible when those are intertwined in a way that might counsel excluding the same evidence from consideration by a lay jury."[13] Accordingly, courts appropriately "relax *Daubert*'s application for bench trials."[14]

Finally, the Federal Rules of Evidence make clear that an "opinion is not objectionable just because it embraces an ultimate issue."[15] Rather, courts may exclude opinion testimony that includes legal conclusions only if it is "so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be."[16] Moreover, courts have recognized that in some matters, as is the case here, while "the value of expert testimony lies in the specialized knowledge that an expert brings to bear on an issue in dispute . . . it is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard."[17]

### III. Dr. Bosley's Testimony is Helpful to the Court and Admissible.

To assist the Court in understanding Defendants' pyramid scheme, the FTC has offered the testimony of Dr. Stacie Bosley, an Associate Professor and Kahlert Endowed Chair of Economics at

---

[13] *United States v. City of Eastpointe*, 378 F. Supp. 3d 589, 613 (E.D. Mich. 2019) (quoting *UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 387 (E.D. Mich. 2006)).

[14] *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012). *See also Tussey v. ABB, Inc.*, 746 F.3d 327, 337 (8th Cir.2014) ("In a bench trial, we not only give the trial court wide latitude in determining whether an expert's testimony is reliable, we also relax Daubert's application.") (internal quotation marks and citations omitted).

[15] *See* FED. R. EVID. 704; *see also United States v. Van Dyke*, 14 F.3d 415, 422 (8th Cir. 1994) (holding that the district court abused its discretion when it precluded expert opinion interpreting bank regulations and concluded that "elaboration by [the expert] would clearly have assisted the jury in understanding the regulation and defendant's reasons for asserting that he had not violated its provisions"); *Lee v. Andersen*, 616 F.3d 803, 808–09 (8th Cir. 2010) (*citing United States v. Arenal*, 768 F.2d 263, 269 (8th Cir.1985) ("Federal Rule of Evidence 702 permits a qualified expert to give opinion testimony if the expert's specialized knowledge would allow the jury to better understand the evidence or decide a fact in issue…. Rule 704(a) provides that expert evidence is not inadmissible because it embraces an ultimate issue to be decided by the jury.").

[17] *United States v. Diaz*, 876 F.3d 1194, 1198 (9th Cir. 2017)(citing FED. R. EVID. 702(a)).

4

Hamline University.[18] Dr. Bosley researches multi-level marketing, direct selling, and pyramid schemes.[19] She is a nationally recognized expert on the issue of pyramid schemes and has written and presented extensively on the economic issues associated with such schemes.[20] She has also provided expert testimony in many other federal cases.[21] Tellingly, Defendants have not challenged Dr. Bosley's credentials, raised issues regarding any specific aspect of analysis in this case, or even deposed her.

Instead, Defendants' Motion testimony mischaracterizes Dr. Bosley's testimony, cherry-picking excerpts from her 59-page report[22] to support a baseless claim that her testimony merely "summarily concludes" that BINT violated the law.[23] Defendants argue from this flawed premise that "whether federal law was contravened/the legality of a business structure is a conclusion of law for the Court to decide."[24] On this basis—and this basis alone—Defendants request that the Court strike her testimony *in its entirety*.[25]

Contrary to Defendants' claims, Dr. Bosley properly opined on the structure of BINT using the economic definition of a pyramid scheme and consideration of factors that courts have identified as important in assessing such schemes. Indeed, Dr. Bosley's report made clear she was not engaging in legal analysis. Dr. Bosley's opinions will undoubtedly be valuable to the Court in making its determinations. Substantially similar testimony has been accepted by numerous courts, in many cases

---

[18] *See* Report of Stacie Bosley, Ph.D., dated September 30, 2022 (hereinafter "Bosley Report"). Doc. #71-4, APP 914-972.

[19] Bosley Report p. 2, ¶2 (APP 915).

[20] Bosley Report, p. 48-53 (APP 961-966).

[21] Bosley Report p. 3, ¶4 (APP 916).

[22] Bosley Report (APP 914-972).

[23] Doc. #89.

[24] Doc. #89, p 2 ¶1.

[25] Doc. #89, p 4 ¶7

from Dr. Bosley herself. *Daubert*, with its liberal admissibility standard, strongly favors admitting her testimony. This is particularly true given that this is a bench trial, as the Court is more than capable of weighing Dr. Bosley's appropriately. Certainly, *Daubert* provides no support for striking her testimony in its entirety, with its numerous methodologically sound conclusions. The Court should therefore deny Defendants' Motion in its entirety.

### a. *Dr. Bosley's opinion offers economic analysis of evidence, not legal conclusions.*

Dr. Bosley analyzed whether BINT meets the economic definition of a pyramid scheme.[26] She further engaged in evidentiary review, relating her economic analysis[27] to court-identified factors relevant to whether a scheme is a pyramid. Dr. Bosley's economic analysis is unquestionably admissible. In fact, Defendants do not even attempt to challenge the validity of this economic analysis.

Moreover, as described above, Dr. Bosley's opinions are not rendered inadmissible merely because she references factors identified by Courts as indicative of a pyramid scheme or applies economic analysis to such factors. Dr. Bosley does not conduct legal analysis and is unequivocal in her report that the question whether BINT's operation of a pyramid scheme is a deceptive under the FTC Act is a legal issue for the Court. In fact, she explicitly states in her report that she is "not an attorney, and this report does not purport to contain a detailed discussion of the legal issues surrounding pyramid schemes. To the extent that this report depends upon legal analysis, [she relied] upon the determination of the applicable law provided to me by Federal Trade Commission staff."[28] Even with the few sentences referencing those legal standards, her entire analysis is framed in terms of economic analysis.

---

[26] Bosley Report p. 5, ¶9 (APP 918).
[27] Bosley Report p. 7, ¶13-14 (APP 920-921).
[28] Bosley Report p.8, ¶15, APP 921.

As discussed in the FTC's Motion for Summary Judgment,[29] the *Koscot* court identified relevant factors for determining whether a promotional scheme is a pyramid. Applying those *Koscot* factors, as Dr. Bosley does, requires economic analysis and consideration of the evidence. Dr. Bosley considered evidence that establishes BINT is a pyramid scheme and noted its relevance by citing the factors identified in the *Koscot* test.[30] Such analysis does not constitute an impermissible legal conclusion.

Unsurprisingly, there is overlap between the legal and economic definitions of a pyramid scheme. But, as federal appellate courts have found, the similarities between these types of analysis does not render economic analysis inadmissible. In *FTC v. BurnLounge*, the Ninth Circuit recognized the close relationship between the economic and legal definition of pyramid schemes. In that case, the FTC's expert was challenged for *not* basing his analysis of evidence on the accepted legal factors for identifying a pyramid. The *BurnLounge* Court rejected that challenge, noting that the economic and legal definitions are not "materially different" and declining to exclude the expert. In ruling, the Court voiced no concerns about the FTC's expert having made any purportedly improper legal conclusions.[31]

Here, Dr. Bosley analyzed both whether BINT met the economic definition of a pyramid scheme and, applying economic analysis, whether factors courts previously analyzed in pyramid cases were present in the BINT scheme. These analyses are substantially similar and intertwined because, as the *BurnLounge* court noted, the economic factors of pyramids "do not materially differ" from the legal test.[32]

---

[29] Doc. #70, §VI.B.

[30] Bosley Report, p. 7, ¶13 (APP 920).

[31] *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 889 (9th Cir. 2014).

[32] *BurnLounge*, 753 F.3d at 889.

Dr. Bosley's opinions plainly concern economic analysis. For example, Bosley's report noted that "[f]rom an economic perspective, a pyramid scheme exists when a compensation structure is designed to create a perpetual recruitment chain that dooms the majority of participants to financial loss. A pyramid scheme, also called a chain-referral scheme, requires ongoing recruitment as new entrants must recruit others in order to cover their own personal investment."[33] Dr. Bosley goes on to state that "[a] pyramid scheme can be embedded within a business opportunity that offers a product or service for sale, and it can also be promoted as a chain-referral scheme without an accompanying product or service."[34] This economic definition of a pyramid scheme is substantially similar to the legal test for a pyramid scheme, as the *Koscot* court noted: "Recruiting chains and similar schemes involve the inevitably deceptive representation (conveyed by their mere existence) that any individual can recoup his or her investment by means of inducing others to invest".[35] However, Dr. Bosley's economic analysis is not inadmissible merely because the legal standard involves similar issues.

Defendants misconstrue Dr. Bosley's economic analysis to be an application of law, which it is not. Had Defendants deposed Dr. Bosley, they could have sought clarification on her methodology, evidence analysis, how she identified the relevant evidence, her conclusions, and why she references the legal test. They failed to do so, and produced no expert of their own to rebut Dr. Bosley's opinion. Having foregone expert discovery of their own, Defendants' Motion completely ignores the details of Dr. Bosley's report. Defendants' argument would mean the Court could not rely upon expert testimony where factual and legal issues are related. The Court should reject that argument.

---

[33] Bosley Report p. 5, ¶9 (APP 918).

[34] Bosley Report p. 6, ¶11 (APP 919).

[35] *Koscot Interplanetary*, 86 F.T.C. at 1181

### b. Courts have routinely admitted similar expert testimony from Dr. Bosley and other pyramid experts.

Dr. Bosley has served as an expert witness in pyramid scheme litigation for the Federal Trade Commission, the Securities and Exchange Commission, and the Washington State Attorney General's Office, among other clients. District courts in Arizona, Utah, Texas, California, Kentucky, and Florida have recognized Dr. Bosley's qualifications and allowed her opinions.[36] Notably, Dr. Bosley has never been excluded by any court.

Moreover, Dr. Bosley's approach is consistent with analyses from other experts accepted by in pyramid cases.[37] For example, the Ninth Circuit, in *BurnLounge, Inc.*, affirmed a district court's admission of expert testimony where expert "testified about whether [defendant] was a pyramid."[38] Likewise, in *Youngevity Int'l, Inc. v. Smith*, a federal district court permitted expert testimony that "'provid[ed] an opinion as to whether or not the program [was] a pyramid and endless chain scheme.'"[39] In fact, the expert report described "what characteristics of Wakaya's multi-level marketing program match characteristics of a pyramid scheme."[40] As these prior cases establish, Dr.

---

[36] Bosley Report p. 3, ¶ 4 (APP 916).

[37] *See, e.g.*, *United States v. Gold Unlimited*, 177 F.3d 472, 475 and 481 (6th Cir. 1999) (relying on expert testimony analyzing a MLM business's "marketing materials, organizational structure, and recruiting policies" in a pyramid case); *FTC v. Vemma Nutrition Co.*, No. CV-15-01578-PHX-JJT, 2015 WL 11118111, at *3 (D. Ariz. Sept. 18, 2015) ("In other words, as the FTC's expert, Dr. Bosley, correctly stated in her report, an ultimate user under the second *Koscot* prong is limited to one who would have purchased a product even if not for the income opportunity."); *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 4950348, at *3 (D. Ariz. Oct. 25, 2021) ("Dr. Bosley's report includes a detailed analysis of VOZ Travel, culminating in her conclusion that '[i]n promoting the VOZ compensation structure, SBH is offering a second pyramid scheme and misrepresenting the income opportunity to prospective and current participants.'").

[38] *BurnLounge, Inc.*, 753 F.3d at 888.

[39] No. 16-cv-704, 2018 U.S. Dist. LEXIS 24512, *12 (S.D. Cal. Feb. 13, 2018).

[40] *See id.*

Bosley's testimony is in fact typical of pyramid cases, and federal courts across the country have found such testimony valuable in deciding similar cases. Accordingly, this Court should follow the well-worn path of other courts by admitting Dr. Bosley's testimony.

### c. Dr. Bosley's expert testimony should be liberally admitted, as the Court will be more than capable of giving her testimony appropriate weight at a bench trial.

As noted above, Dr. Bosley's economic analysis demonstrates that BINT operated as a pyramid is helpful to the Court, similar to admitted expert testimony in previous pyramid matters, and admissible. But even if the opinion's reference to legal factors somehow made it inappropriate for a jury, in the context of a bench trial "the court is able to view such statements as mere surplusage, and to focus instead on those portions of [the expert's] analyses that assist[s] the court's understanding of the [economic] data."[41] This is because "[w]hen the district court sits as the finder of fact, '[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.'"[42] Likewise, "[a] trial judge is 'presumed capable of weighing evidence to sift the important from the unimportant, and even the admissible from the inadmissible when those are intertwined in a way that might counsel excluding the same evidence from consideration by a lay jury.'"[43] "Thus, this

---

[41] *In re Joy Recovery Tech. Corp.*, 286 B.R. at 69. *See Durham v. Lake Cnty. Indiana*, No. 2:13-CV-300-JEM, 2022 WL 2208121, at *4 (N.D. Ind. June 21, 2022) (denying motion to exclude expert testimony as making a legal conclusion of whether plaintiffs were exempt or non-exempt employees for purposes of the payment of overtime compensation where expert testified concerning what factors and standards make an employee eligible for overtime compensation and reasoning "Expert testimony regarding the factors in determining overtime eligibility is useful for assisting the jury in understanding how employers should make that determination. [The expert] may not, however, testify as to the ultimate issue of whether Plaintiffs were exempt or non-exempt employee.").

[42] *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012).

[43] *United States v. City of Eastpointe*, 378 F. Supp. 3d 589, 613 (E.D. Mich. 2019), *quoting UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 387 (E.D. Mich. 2006); *Boeing Co. v. KB Yuzhnoye*, No. CV1300730ABAJWX, 2015 WL 12803452, at *3 (C.D. Cal. Nov. 3, 2015) (denying motion to strike expert testimony, reasoning "While Professor Cunningham's report and testimony may be (arguably) conflated with legal conclusions, 'the Court itself acts as the ultimate trier of fact at a bench trial, the

is a situation in which . . . liberal admission of the challenged opinions is appropriate."[44] As such, the Court should conclude that it is qualified to provide Dr. Bosley's opinion the weight it deserves and decline to exclude her testimony.

### d. Dr. Bosley's report includes many conclusions that Defendants do not challenge. These should not be stricken regardless of the Court's conclusion concerning the challenged testimony.

Lastly, even if one of Dr. Bosley's conclusions improperly concerned a question of law, that would not justify exclusion of Dr. Bosley's other opinions, which Defendants have not challenged and undoubtedly do not concern a question of law. While Defendants attack a single opinion from Dr. Bosley's report, she offers many conclusions in her 59-page report.[45] For example, Dr. Bosley's concluded that "profit representations in BINT materials did not reflect the profit likely to be earned by the typical participant nor that of the majority of participants, and representations were made without an objective basis."[46] Dr. Bosley also found that BINT recruits paid other members "in return for which they received the right to earn compensation for recruiting others into the BINT program" and

---

Court's role as a gatekeeper pursuant to Daubert is arguably less essential'"); *Window Specialists, Inc. v. Forney Enterprises, Inc*., 47 F. Supp. 3d 53, 60 (D.D.C. 2014) (in bench trial, denying motion to strike expert opinion that touched on legal conclusion, and reasoning "[b]ecause this case will be tried to the Court, there is no danger of jury confusion from Mr. Peterson's testimony. Further, the Court will make its own findings of fact and conclusions of law."); *In re Joy Recovery Tech. Corp*., 286 B.R. 54, 67–69 (Bankr. N.D. Ill. 2002) (denying motion to exclude expert testimony where the expert "expressly referred to the Illinois Fraudulent Transfer Act ("IUFTA") in his written report and lifted language directly from the statute," reasoning that "[a]lthough, [the expert] organized the disputed section of his report to correspond to subsections of the IUFTA, the actual analysis was consistent with principles of accountancy," and further reasoning that in the bench trial setting, the court would "not rely on the expert to instruct it on the law").

[44] *Rozo v. Principal Life Ins. Co*., No. 4:14-cv-00463, 2020 WL 12968436, at *1–2 (S.D. Iowa Oct. 21, 2020) (denying motion to strike expert in the context of a bench trial).

[45] Bosley Report p. 54-56 (APP 967-969).

[46] Bosley Report p. 29, ¶39 (APP 942).

11

that "there were no ultimate user sales in BINT and there was no connection between BINT rewards and ultimate user sales."[47]

Importantly, Dr. Bosley analyzed the results of a BINT Membership survey initiated by Defendants. Based on the results of Defendants' survey, Dr. Bosley's analysis determined that "the vast majority [of BINT members] were in a loss position at the time of the survey, having paid into BINT more than they received in return."[48] Her analysis found that "of the 5,929 unique respondents, 84.6 percent indicated that they had not received a 'blessing' from BINT while 56.2 percent reported that they had 'brought people into the BINT community.'"[49] Dr. Bosley found that "there was no connection between earnings in BINT and sales of a product or service to ultimate users"[50] and that "[t]he ability for the most recent members to reach a positive cumulative net profit relied upon an ongoing and consistent ability to recruit new members."[51] She further concluded that "the company consistently misrepresented likely earnings as well as the legality of the scheme to new recruits and members."[52] Lastly, Dr. Bosley concluded that "[t]he anticipated result of the company's program, as designed, was an endless recruitment chain, in which recruits made payments to other BINT participants, in return for which the recruit obtained the right to receive compensation for recruiting others into the program. At any moment that the scheme would be analyzed, my analysis indicates that

---

[47] Bosley Report p. 29, ¶41 (APP 942).

[48] Bosley Report p. 30, ¶45 (APP 943).

[49] Bosley Report p. 30, ¶45 (APP 943).

[50] *Id.* at p. 45, ¶65 (APP 958).

[51] *Id.* at p. 46, ¶66 (APP 959).

[52] *Id.* at ¶68 (APP 959).

the majority would be expected to be in a loss position."[53] This type of analysis is integral in aiding the understanding the structure and the effects of the BINT scheme.

In addition to her Report, Dr. Bosley submitted a nine-page Supplemental Report based on information the FTC received from a third-party vendor and payment processor.[54] The Supplemental Report interprets that data to provide important information such as the number of BINT participants. While Defendants appear to request that this testimony be excluded as well, they have presented no argument to support their request, and this analysis cannot be characterized as a legal conclusion. The Court should therefore deny Defendants' overbroad request as to Dr. Bosley's Supplemental Report too.[55]

The Eighth Circuit has described total exclusion of expert testimony as a remedy to be invoked rarely. Such exclusion "is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury."[56] Dr. Bosley's in-depth and rigorous analysis will unquestionably aid the Court, as she has done for many other courts in similar cases. Moreover, it would be particularly improper to exclude Dr. Bosley's testimony and reports here, where the Court (as opposed to a jury) is considering the expert testimony.[57] Lastly, Dr. Bosley's testimony is of added importance given that she is the only expert in this case. Striking her testimony would leave this matter without expert testimony to assist

---

[53] *Id.* at ¶69 (APP 959).

[54] Doc. #79 (Sealed Document), Bosley Supplemental Report

[55] Doc. #79 (Sealed Document), Bosley Supplemental Report, p 7 ¶ 14.

[56] *See Wood v. 3M*, 112 F.3d 306 (8th Cir. 1997) (internal quotations and citations omitted).

[57] *See WFC Holdings Corp. v. United States*, No. 07-cv-3320, 2010 U.S. Dist. LEXIS 24721, *12-13 (D. Minn. Mar. 17, 2010) (citing *Van Dyke*, 14 F.3d at 422) ("In a bench trial . . . the Court is well-prepared to identify expert evidence that operates to inform the Court of the circumstances of the complex transaction at issue in this case, and distinguish that evidence from expert opinions that invade the province of the Court or offer interpretations of the law that go to the heart of the legal issues in this case.").

the court in the economic and quantitative aspects of the case. Accordingly, Defendants' requested relief is not only contrary to law but would also deprive the Court of valuable economic analysis.

## IV. Conclusion

For the foregoing reasons, the FTC respectfully requests that Defendants' Motion be denied in full.

Respectfully submitted,

Dated: 3/07/2023

/s/ Reid Tepfer
REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
ANNE LEJEUNE
alejeune@ftc.gov
Texas Bar No. 24054286
DAVID ALEX
dalex@ftc.gov
Texas Bar No. 24003256
SERENA MOSLEY-DAY
smosleyday@ftc.gov
Georgia Bar No. 101006
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 979-9371 (Lejeune)
(214) 979-9370 (Alex)
(214) 979-9390 (Mosley-Day)
(214) 953-3079 (fax)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on March 7, 2023, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Eastern District of Arkansas, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court.

Justin N. Bryan
Kristin M. Hecker
McCathern, PLLC
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
(214) 741-2662
jbryan@mccathernlaw.com
khecker@mccathernlaw.com
Counsel for Defendants BINT Operations LLC,
LaShonda Moore, and Marlon Moore


Jason Epperson
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
Jason.Epperson@arkansasag.gov


        */s/ Reid Tepfer*
        REID TEPFER